GAUL

v.

OLYMPIA FITNESS CENTER, INC. et al., Appellants; STATE SAVINGS
& LOAN COMPANY, n.k.a. First Nationwide Bank, Appellee.

[Cite as *Gaul v. Olympia Fitness Center, Inc.* (1993), 88 Ohio App.3d 310.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 62936, 62937.

Decided June 21, 1993.

*Brian J. Essi,* for appellants.

*Arter & Hadden, Kris H. Treau* and *Donald J. Fisher,* for appellee.

PORTER, Judge.

Cross-defendant-appellant, Olympia Fitness Center, Inc. ("Olympia"), appeals the trial court's entry of summary judgment in favor of appellee First Nationwide Bank ("First Nationwide") on its cross-claim in the amount of $1,219,779.51, the unpaid balance due on Olympia's promissory note, and a foreclosure upon the real property securing the note. Olympia also appeals the award of attorney fees for First Nationwide's legal efforts in obtaining the judgment and effecting foreclosure proceedings. Olympia argues that there were material issues of fact arising from its claims that First Nationwide's earlier acceptance of late installment payments on the note operated as an estoppel or waiver of subsequent

defaults, and that First Nationwide acted in "bad faith" in failing to give reasonable time to cure the defaults and in failing to properly account for proceeds of a trust account applied to the partial satisfaction of the note. Olympia also claims that attorney fees were improperly awarded because the "American Rule" does not permit the prevailing party to recover attorney fees in the absence of statutory authorization despite a contractual provision allowing same. For the reasons hereinafter discussed, we find that summary judgment was properly granted and we affirm the judgment below in all respects.

This case originated on February 4, 1987, when the Treasurer of Cuyahoga County filed a complaint for collection of delinquent taxes, assessments, penalties and interest, foreclosure and equitable relief against Olympia and other interested defendants, including First Nationwide, mortgagee of the real property in question.

First Nationwide filed its initial answer on March 30, 1987 and an amended answer and cross-claim on January 29, 1988, respectively. First Nationwide subsequently filed its second amended answer and cross-claim against Olympia on December 4, 1989. First Nationwide's second amended cross-claim sought judgment on the Olympia note and foreclosure of the mortgage securing the note.

On February 12, 1990, Olympia filed its answer to the second amended cross-claim and admitted the execution and delivery of the note, the mortgage and other loan documents evidencing the debt, the security and Olympia's obligation thereunder.

On October 18, 1990, First Nationwide filed its motion for summary judgment on the second amended cross-claim. Following briefing by the parties, on April 30, 1991, the trial court granted First Nationwide's motion for summary judgment.

After further briefing on damage issues raised by Olympia, on November 15, 1991 the trial court entered an amended judgment entry in favor of First Nationwide in the amount of $1,177,301.21, together with statutory interest plus attorney fees and costs to be determined at a subsequent hearing. First Nationwide and Olympia subsequently reached an agreement and executed an agreed judgment entry stipulating $32,500 as the amount of attorney fees and costs which was entered on December 3, 1991.

On December 16, 1991, cross-defendants-appellants Olympia and Dan Horwitz, Trustee, filed separate notices of appeal. On April 8, 1992, this court ordered case Nos. 62936 and 62937 consolidated for record, briefing, hearing and disposition.

The facts relating to this appeal are primarily contained in the voluminous exhibits attached to First Nationwide's motion for summary judgment and Olympia's brief in opposition to same.

On December 28, 1979, First Nationwide [1] purchased from the city of Solon, Ohio an "industrial development first mortgage revenue note" (hereinafter "note") in the amount of $1,400,000. Solon then loaned the proceeds to Olympia Associates under a loan agreement pursuant to which Olympia Associates agreed to pay the note in accordance with its terms. In order to secure its obligations under the loan agreement, on the same date, Olympia Associates also executed and delivered an "open end mortgage and security agreement" ("mortgage"). Solon concurrently executed and delivered to First Nationwide an assignment of all of its right, title and interest in the loan agreement and mortgage. These documents were filed with the Cuyahoga County Recorder.

On December 28, 1979, Olympia Associates and First Nationwide also entered into an agreement pursuant to which Olympia Associates unconditionally guaranteed payment of the note in full ("guarantee agreement"). In order to secure its obligations to First Nationwide under the guarantee agreement, Olympia Associates simultaneously executed and delivered to First Nationwide an "open end mortgage and security agreement" ("guarantee mortgage"), which was recorded with the Cuyahoga County Recorder.

On December 28, 1979, Dan Horwitz, trustee, also deposited $100,000 with First Nationwide pursuant to a pledge agreement which granted power of attorney to First Nationwide to withdraw and apply the aforementioned $100,000 from the trust account to payment of principal and interest upon Olympia Associates' default under the note.

By deeds dated November 3, 1983, Olympia Associates transferred its mortgaged property to cross-defendant-appellant Olympia. In connection with the transfer of the mortgaged property, Olympia Associates, First Nationwide and Olympia entered into an "assumption agreement without release of the original borrower" ("assumption agreement"), pursuant to which Olympia expressly assumed and agreed to pay the unpaid principal balance of the note, together with interest due and owing. The deeds and assumption agreement were recorded with the Cuyahoga County Recorder.

The mortgage and guarantee mortgage both contain the following provisions:

---

1. First Nationwide was formerly known as State Savings and Loan Company. Many of the original loan documents were executed on Olympia's part by Olympia Associates East ("Olympia Associates"), which on October 23, 1983 transferred the mortgaged property to Olympia Fitness Center, Inc. ("Olympia"), which assumed the obligation without release of Olympia Associates. We will use Olympia as though it refers to both parties throughout, except where clarification is necessary to trace the history of the transaction.

"As security * * * [Olympia] does hereby * * * mortgage * * * all of the real properties * * * described * * * in Exhibit A attached [to the Mortgage and Guarantee Mortgage respectively] * * *.

"As further security [Olympia] does hereby grant a security interest in * * * and set over unto [First Nationwide] the additional real and personal property of [Olympia] * * * described in Exhibit B attached * * *.

"Upon the occurrence of any such Event of Default which has not been timely cured, * * * the balance of the Loan Payments with accrued interest shall * * * upon declaration to such effect delivered by [First Nationwide to Olympia] become and be immediately due and payable * * *.  Upon the occurrence of any such Event of Default [First Nationwide] may exercise [its right to] proceed to protect and enforce its rights under this Mortgage * * * by a suit in equity * * * for any foreclosure hereunder * * *."

"Event of default" is defined in both the mortgage and the guarantee mortgage to include the failure to make full and prompt payment of the principal and interest on the note when due.

On November 1, 1988, Olympia stopped making the loan payments required under the note.  Pursuant to the note, mortgage and guarantee mortgage, First Nationwide had the right upon default in such payments to accelerate and call due the balance of the note.

Because Olympia had failed to make any loan payments since November 1988, First Nationwide filed its second amended cross-claim against Olympia on December 4, 1989.  First Nationwide's second amended cross-claim sought judgment on the full balance of the note outstanding and sought foreclosure of the mortgage on the scheduled properties.[2]  The court granted summary judgment in favor of First Nationwide on November 15, 1991 and subsequently awarded attorney fees and costs, from which this appeal was taken.

We address Olympia's assignments of error in the order presented.

"I.  The trial court erred to the prejudice of defendant-appellant Olympia Fitness Center, Inc. by granting summary judgment [in favor of] defendant-appellee First Nationwide Bank."

In order to sustain summary judgment on its second amended cross-claim against Olympia, First Nationwide had the burden of establishing, through proper evidentiary materials, that there was no genuine issue of material fact, that it was entitled to judgment as a matter of law, and that the evidence viewed

---

2.  First Nationwide's January 29, 1988 first amended cross-claim did not affirmatively seek foreclosure.  Rather, it prayed for protection of its interests "should the premises above described be foreclosed" pursuant to the Cuyahoga County Treasurer's complaint.

in the light most favorable to the nonmoving party, would lead reasonable minds to but one conclusion that is adverse to the nonmoving party. Civ.R. 56(C); *Allen v. R.G. Indus. Supply* (1993), 66 Ohio St.3d 229, 234, 611 N.E.2d 794, 799. An analysis of the evidence before the trial court demonstrates that First Nationwide met its burden and that its motion for summary judgment was properly granted.

On October 13, 1990, First Nationwide filed its motion seeking summary judgment on its December 4, 1989 second amended cross-claim. The motion was properly supported by Olympia's answer, which admitted the execution, delivery, filing and recording of the note, mortgage and relevant loan documents. The affidavit of First Nationwide's loan person, Erma J. O'Brien, further established that Olympia was in default on its monthly principal and interest payments since November 1, 1988 and that the unpaid balance due on Olympia's Note was $1,219,799.51 plus interest at 8.5 percent per annum from November 1, 1988.

As previously noted, the note and mortgage define "event of default" to include the failure to make full and prompt payment of the principal and interest on the note when due, giving First Nationwide the right to accelerate and declare the entire balance due and owing and foreclose on the mortgaged property.

■ Under Ohio law, once a default in payment has occurred under the terms of a note, and once the note has been accelerated, the holder of the note is entitled to judgment. *King v. Safford* (1869), 19 Ohio St. 587; *Union Cent. Life Ins. Co. v. Curtis* (1880), 35 Ohio St. 357; *Bradfield v. Hale* (1902), 67 Ohio St. 316, 65 N.E. 1008; *Evilsizor v. Speckbaugh* (App.1949), 55 Ohio Law Abs. 353, 88 N.E.2d 296. See, also, *McClelland v. Bishop* (1884), 42 Ohio St. 113; *Rinehart v. Connecticut Mut. Ins. Co.* (App.1931), 10 Ohio Law Abs. 57.

First Nationwide's motion for summary judgment and supporting documentation established *prima facie* all of the elements of its second amended cross-claim for judgment on the note and foreclosure on the property securing the note.

In opposing First Nationwide's motion for summary judgment, Olympia could not rest upon its pleadings or allegations, but had to produce evidence showing genuine issues of material fact. Civ.R. 56(E). Mere conclusory and unsupported allegations do not satisfy this burden. *Mathis v. Cleveland Pub. Library* (1984), 9 Ohio St.3d 199, 202, 9 OBR 511, 514–515, 459 N.E.2d 877, 880; *Stibora v. Greater Cleveland Bowling Assn.* (1989), 63 Ohio App.3d 107, 113, 577 N.E.2d 1175, 1178–1179.

Olympia did not produce any evidence to controvert the material facts establishing First Nationwide's right to summary judgment on its second amended cross-claim. Significantly, Olympia did not dispute its failure to make loan payments since November 1988 and it did not deny that it was in default of its

loan obligations. Furthermore, Olympia did not present any evidence to dispute the balance due and owing to First Nationwide based on the O'Brien affidavit and the supporting loan history.

Although Olympia did not dispute the material facts establishing First Nationwide's prima facie right to judgment and foreclosure, it, nevertheless, argued that factual issues relating to certain affirmative defenses precluded the entry of summary judgment. Olympia specifically argued then, and argues now, that the defenses of waiver, estoppel and "bad faith" bar First Nationwide from recovering on its second amended cross-claim, and the existence of genuine issues of material fact relating to these defenses, rendered summary judgment improper. These factual defenses may be briefly described as follows:

1. First Nationwide's previous acceptance of late loan payments from Olympia during earlier defaults;

2. First Nationwide's failure to provide Olympia with a reasonable time to "cure" its defaults; or permit Olympia to seek alternative financing;

3. First Nationwide's filing and subsequent refusal to dismiss its January 1988 cross–claim after Olympia "cured" all of the deficiencies First Nationwide requested and upon which First Nationwide's 1988 default notice and cross–claim were based.

4. First Nationwide's failure to properly account for the application or disposition of the trust account.

We will address each of these contentions below.

1. First Nationwide's Past Acceptance Of Late Loan Payments

Olympia claims that First Nationwide "regularly accepted" late loan payments and therefore waived, or is estopped from pursuing, the default and foreclosure remedies it sought. Olympia cites its loan payment history, which shows that between October 1, 1983 and November 16, 1987, First Nationwide accepted payments which were made an average of sixty-two days past their scheduled due dates. Olympia further relies on First Nationwide's acceptance of thirteen additional loan payments after the filing of First Nationwide's January 29, 1988 cross-claim.

Even if these facts are assumed to be true, they do not deprive First Nationwide of its right to summary judgment as they are immaterial to First Nationwide's December 4, 1989 second amended cross-claim and do not support a waiver or estoppel defense as a matter of law.

It is true that First Nationwide's acceptance of the late loan payments pre-November 1988 may have operated as a waiver of First Nationwide's right to pursue remedies based upon defaults which those payments were aimed to

"cure." However, First Nationwide's second amended cross-claim was based on defaults occurring *since* November 1988, not the prior "cured" defaults. It is undisputed that Olympia made no payments *for periods* [3] after November 1, 1988.

Olympia's brief does not dispute, and as its loan payment history confirms, that Olympia made its last loan payment to First Nationwide in November 1988. First Nationwide's second amended cross-claim was filed a full year *after* Olympia's last loan payments and the motion for summary judgment was filed almost two years *after* the last payment. The fact that First Nationwide accepted late loan payments earlier is not material to First Nationwide's right to judgment on its second amended cross-claim.

First Nationwide's past acceptance of late loan payment through November 1988 does not, as a matter of law, constitute a waiver or estoppel from asserting its right to accelerate the note and foreclose on Olympia's loan and mortgaged property as a result of Olympia's subsequent default in making loan payments.

All of the loan documents upon which First Nationwide's second amended cross-claim and motion were based included "anti-waiver" provisions similar to that set forth in § 6.3 of the guarantee agreement. This section states, in pertinent part:

"No delay or omission to exercise any right or power accruing upon any default * * * shall be construed to be a waiver thereof, and any such right or power may be exercised from time to time and as often as may be deemed expedient * * *. In the event any provision contained in this Agreement shall be breached by any party and thereafter duly waived by the other party * * * such waiver shall be limited to the particular breach so waived and shall not be deemed to waive any other breach hereunder. No waiver, amendment, release or modification of this Agreement shall be established by conduct, custom or course of dealing, but solely by an instrument in writing duly executed by the parties hereto."

To the same effect, see mortgage, Article Fifteenth; guarantee mortgage, Article Fourteenth. These are customary provisions in loan agreements to allow *ad hoc* acceptance of late or delinquent payments without establishing a continuing waiver.

█ It has been consistently held that a mortgagee's past acceptance of late loan payments does not constitute a waiver of the mortgagee's right to accelerate and foreclose on a loan following a subsequent default where the relevant loan documents contain "anti-waiver" provisions similar to those in the loan documents

---

**3.** On November 15, 1988 Olympia tendered a check for $22,258 "to cover the mortgage payments for September and October [1988]." Olympia also paid delinquent real estate taxes of $32,824.07 on April 26, 1989. But Olympia offers no evidence that it ever paid installments of principal and interest for any period after November 1, 1988.

in this case. See, *e.g., Philmon v. Mid–State Homes, Inc.* (1968), 245 Ark. 680, 434 S.W.2d 84; *McCool v. Decatur Cty. Bank of Greensburg* (Ind.App.1985), 480 N.E.2d 596; *Kirkham v. Hansen* (Me.1990), 583 A.2d 1026; *First Fed. S. & L. Assn. v. Stone* (Ind.App.1984), 467 N.E.2d 1226; *Postal S. & L. Assn. v. Freel* (1984), 10 Kan.App.2d 286, 698 P.2d 382. See, also, *Farm Credit Serv. v. Will* (July 17, 1991), Medina App. No. 1870, unreported, 1991 WL 131490; *Frank B. Thomas Trust v. Imperial 400 Natl., Inc.* (Mar. 28, 1990), Summit App. No. 14202, unreported, 1990 WL 34872.

Appellant cites *Westinghouse Credit Corp. v. Shelton* (C.A.10, 1981), 645 F.2d 869, in an effort to convince this court that this should not be the law in Ohio. *Westinghouse Credit* is, however, readily distinguishable from this case as it did not involve the foreclosure on real property and is based upon the Uniform Commercial Code ("UCC"), which has no application to transactions involving real property. See R.C. 1309.04(I) (expressly excluding real property transactions from coverage under Ohio's adaptation of the UCC).

■ First Nationwide's acceptance of late loan payments at an earlier date is not material to its right to insist on prompt and timely payment at a later date where the loan documents themselves make clear there has been no waiver. Therefore, the trial court properly rejected Olympia's "past payment/waiver" defense to the summary judgment motion.

2. Olympia's Claim That First Nationwide Failed to Give it Time to Cure its Default

Olympia also claims that First Nationwide's filing of its January 1988 cross-claim deprived Olympia of a reasonable time to "cure" its default by securing replacement financing or liquidating the mortgaged property. According to Olympia, issues of fact relating to this alleged "failure" precluded the entry of summary judgment. Once again, Olympia overlooks the fact that First Nationwide's October 18, 1990 motion for summary judgment was based on its second amended cross-claim and Olympia's admitted default in making any loan payments for periods *after* November 1, 1988. Whether or not First Nationwide gave Olympia sufficient time to "cure" the defaults existing prior to November 1988 is irrelevant to First Nationwide's rights arising from Olympia's subsequent defaults beginning in November 1988.

■ As evidenced by the proceedings and record in this case, Olympia cannot complain of lack of opportunity to cure its post-November 1988 defaults. Olympia was on notice of First Nationwide's intentions when it received service of First Nationwide's December 4, 1989 second amended cross-claim and the October 1990 motion for summary judgment. These pleadings provided Olympia with ample notice of First Nationwide's intention to accelerate the debt and

foreclosure on Olympia's loan as a result of Olympia's failure to make any loan payments since November 1988. *Nixon v. Buckeye Bldg. & Loan Co.* (App.1934), 18 Ohio Law Abs. 261, 263–264. The trial court did not enter a final judgment in First Nationwide's favor until November 15, 1991—three years after Olympia's last payment. During this time, Olympia made no payments on its loan for post-November 1988 periods, and did not tender any such payments, in an effort to "cure" the defaults upon which First Nationwide's right to judgment and foreclosure rested. On the face of this record, Olympia's "lack of opportunity to cure" defense lacks any factual support.

3. Olympia's "Bad Faith" Defense

█ Olympia contends that First Nationwide's "bad faith" in the performance of contractual duties is recognized as a distinct tortious cause of action entitling an injured party to damages proximately resulting. See *Motorists Mut. Ins. Co. v. Said* (1992), 63 Ohio St.3d 690, 692, 590 N.E.2d 1228, 1230–1231, and fn. 1. However, Olympia's answer to First Nationwide's second amended cross-claim contains no "bad faith" counterclaim or affirmative defense against First Nationwide. Therefore, its alleged applicability as a defense to First Nationwide's second amended cross-claim has been waived. *Houser v. Ohio Historical Soc.* (1980), 62 Ohio St.2d 77, 79, 16 O.O.3d 67, 68, 403 N.E.2d 965, 966; *King v. Branch Motor Express Co.* (1980), 70 Ohio App.2d 190, 193–198, 24 O.O.3d 250, 252–255, 435 N.E.2d 1124, 1127–1130. Even if Olympia's "bad faith" defense is not considered waived, the facts upon which it is based do not create any issues of *material* fact which would deprive First Nationwide of the judgment entered in its favor. As discussed previously, First Nationwide's past acceptance of late payments, and its conduct relating to Olympia's pre-January 1988 default, are not material to Olympia's subsequent defaults post-November 1988, which were the subject of First Nationwide's second amended cross-claim and the 1990 motion for summary judgment. As a matter of law, Olympia's "bad faith" defense cannot defeat First Nationwide's right to seek judgment on the note and foreclose on its security when there has been no payment for three years.

Olympia's reliance on *K.M.C. Co., Inc. v. Irving Trust Co.* (C.A.6, 1985), 757 F.2d 752, is misplaced. Olympia argues that First Nationwide's power to accelerate and foreclose on Olympia's loan and mortgaged property is subject to a standard of "good faith." Olympia then argues that the combination of the pre-November 1988 facts underlying its "bad faith" defense create an issue of material fact. We disagree. *K.M.C.* involved a financing agreement subject to the provisions of the UCC which imposes a duty of good faith on all UCC-governed transactions. See R.C. 1301.09 (Ohio's codification of UCC 1–203). First Nationwide's second amended cross-claim against Olympia is, however, based upon a transaction involving real property. Real property transactions are

expressly *excluded* from coverage under the UCC. R.C. 1309.04(I). Therefore, the duty of good faith announced in *K.M.C.* does not apply to the facts in this case as a matter of law.

■ In any event, Ohio courts have not uniformly accepted the holding in *K.M.C.* A lender's decision to enforce its contract rights is not considered an act of "bad faith." *Bennco Liquidating Co. v. Ameritrust* (1993), 86 Ohio App.3d 646, 621 N.E.2d 760; *First Fed. S. & L. Assn. of Akron v. Chelton & Rabe* (1989), 57 Ohio App.3d 137, 567 N.E.2d 298; *Third Natl. Bank & Trust Co. v. Sinder* (June 18, 1987), Montgomery App. No. 9995, unreported, 1987 WL 12965. In *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting* (C.A.7, 1990), 908 F.2d 1351, it was held that a bank's refusal to advance additional funds under an otherwise sufficient line of credit did not constitute "bad faith" where the bank had no contractual obligation to do so. *Id.* at 1358. In reaching this conclusion, the *Kham* court held:

"Firms that have negotiated contracts are entitled to enforce them to the letter, even to the great discomfort of their trading partners, without being mulcted for lack of 'good faith.' Although courts often refer to the obligation of good faith that exists in every contractual relation, e.g., UCC § 1–201; *Jordan v. Duff & Phelps, Inc.*, 815 F.2d 429, 438 (7th Cir.1987), this is not an invitation to the court to decide whether one party ought to have exercised privileges expressly reserved in the document. 'Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties.

" * * *

"Although Bank's decision left Debtor scratching for other courses of credit, Bank did not create Debtor's need for funds, and it was not contractually obliged to satisfy its customer's desires. The Bank was entitled to advance its own interests, and it did not need to put the interests of Debtor and Debtor's other creditors first. To the extent *K.M.C., Inc. v. Irving Trust Co.*, 757 F.2d 752, 759–63 (6th Cir.1986), holds that a bank must loan more money or give more advance notice of termination than its contract requires, we respectfully disagree. First Bank of Whiting is not an eleemosynary institution. It need not throw good money after bad, even if other persons would catch the lucre." *Id.* at 1357–1358. See, also, *Fasolino Foods Co. v. Banca Nazionale del Lavaro* (C.A.2, 1992), 961 F.2d 1052, 1056–1057.

The undisputed facts in this case demonstrate that First Nationwide did nothing more than stand on its rights to require payment of Olympia's contractu-

al obligations according to its terms. That can not be "bad faith" or a defense to the summary judgment motion.

4. The Trial Court's Finding as to the Unpaid Loan Balance

First Nationwide's motion for summary judgment was supported by the affidavit of Erma O'Brien, a loan officer. It attested to a true and accurate copy of Olympia's loan payment history, including the application of all payments to the loan and the balance due and owing to First Nationwide, which was attached to and incorporated in Ms. O'Brien's affidavit.

Olympia provided the trial court with no evidence to dispute the O'Brien testimony or documentation which supported the application of loan payments and the outstanding balance of $1,219,779.51 owed by Olympia. Nevertheless, Olympia claims that the trial court's entry of summary judgment based on this evidence should be reversed because issues of fact exist as to whether First Nationwide applied certain funds deposited into a trust account against the balance due on Olympia's Note.

In opposing First Nationwide's motion and the O'Brien affidavit, Olympia had to produce evidence showing a genuine issue of material fact. Mere conclusory and unsupported allegations, do not satisfy this burden. *Stibora v. Greater Cleveland Bowling Assn.* (1989), 63 Ohio App.3d 107, 113, 577 N.E.2d 1175, 1178–1179.

Olympia's claim that the trust account funds were not properly applied to Olympia's loan is not supported by any evidentiary materials. While it is true that funds were withdrawn from the trust account and First Nationwide lacked knowledge as to the specific disposition of those funds, the fact remains that First Nationwide presented proper evidence showing the application of *all* payments (from whatever source) to Olympia's note and the loan account. Olympia presented no evidence to contradict First Nationwide's duly sworn and authenticated loan history. There is no claim asserted in this case [4] that First Nationwide breached any duties in the handling of the trust account. If so, that would be grounds for a cause of action for breach of trust independent of this suit on the note and the mortgage foreclosure. The trial court's entry of summary judgment based upon the uncontroverted evidence will be affirmed.

Assignment of Error I is overruled.

"II. The trial erred to the prejudice of Olympia by awarding attorney fees to [First] Nationwide in this action."

---

4. Defendant-appellant Dan Horwitz, trustee, attempted to assert a cross-claim against First Nationwide on the trust account issues, but leave to file same was denied. No assignment of error has been asserted on that ruling.

Olympia's second assignment of error challenges the award of attorney fees to First Nationwide. An analysis of the facts in this case reveals the court properly awarded First Nationwide an amount of reasonable attorney fees and costs stipulated to be $32,500. This issue is governed by the Ohio Supreme Court's recent decision in *Nottingdale Homeowners' Assn., Inc. v. Darby* (1987), 33 Ohio St.3d 32, 514 N.E.2d 702.

In *Nottingdale,* a nonprofit condominium association was awarded attorney fees when it prevailed in a foreclosure action against a condominium unit owner who refused to pay his monthly maintenance fees. The trial court entered the award of attorney fees based on a clause contained in the association's "declaration of condominium ownership" which provided for attorney fees in the event of a foreclosure. In affirming the trial court's decision, the Supreme Court held, at paragraph one of syllabus:

"Provisions contained within a declaration of condominium ownership and/or condominium by-laws requiring that a defaulting unit owner be responsible for the payment of attorney fees incurred by the unit owners' association in either a collection action or a foreclosure action against the defaulting unit owner for unpaid common assessments are enforceable and not void as against public policy so long as the fees awarded are fair, just and reasonable as determined by the trial court upon full consideration of all the circumstances of the case."

The *Nottingdale* decision was quoted and followed by this court in *First Fed. Sav. Bank v. W.S.B. Invest., Inc.* (1990), 67 Ohio App.3d 277, 285, 586 N.E.2d 1159, 1164.

As in *Nottingdale,* Olympia's and First Nationwide's guarantee agreement in this case also contained a contractual provision requiring Olympia to pay First Nationwide all reasonable attorney fees it incurred in enforcing payment and foreclosure rights. Section 2.7 of the guarantee agreement states as follows:

"The Borrower hereby expressly waives notice in writing, or otherwise, from the Mortgage Assignee or the holders, at any time or from time to time, of the Project Note of their acceptance and reliance on this Agreement. The Borrower agrees to pay all costs, expenses and fees, including to the extent permitted by law, all reasonable attorneys' fees, which may be incurred in enforcing this Agreement, whether the same shall be enforced by suit or otherwise."

Olympia does not dispute the contractual provision, nor does it dispute the reasonableness of the amount of fees and expenses to which it stipulated. Therefore, the only pertinent issue is whether the fees are permitted by law under the Ohio Supreme Court's decision in *Nottingdale.*

Olympia argues that *Nottingdale* does not apply because its holding does not expressly allow the award of attorney fees "in a commercial foreclosure action."

Olympia further relies upon *Sorin v. Bd. of Edn.* (1976), 46 Ohio St.2d 177, 75 O.O.2d 224, 347 N.E.2d 527, to support its argument that Ohio continues to follow the "American rule," which does not permit a prevailing party to recover attorney fees absent statutory authorization or the institution of proceedings in "bad faith."

Olympia's reliance on the American rule and *Sorin* as authorities prohibiting the contractually based award of attorney fees is misplaced. As the Supreme Court recognized in *Nottingdale,* the American rule provides " 'that attorney's fees are not ordinarily recoverable in the absence of a statute *or enforceable contract providing therefor.*' " (Emphasis *sic.*) *Nottingdale,* 33 Ohio St.3d at 34, 514 N.E.2d at 704. The *Nottingdale* court further stated that *Sorin* does not support "the conclusion that parties may not *contract* under circumstances like those of this case for the payment of attorney fees." (Emphasis *sic.*) *Id.* at 35, 514 N.E.2d at 705. In reaching this conclusion, the court expressly rejected Olympia's current contention that attorney fees can only be awarded upon a showing of statutory authority or "bad faith," and not upon contract, because such a rule would "stand the law of contracts on its proverbial head. We decline to do so." *Id.* at 35, 514 N.E.2d at 705. Significantly, the court further stated:

"It has long been recognized that persons have a fundamental right to contract freely with the expectation that the terms of the contract will be enforced. This freedom 'is as fundamental to our society as the right to write and to speak without restraint.' * * * Government interference with this right must therefore be restricted to those exceptional cases where intrusion is absolutely necessary, such as contracts promoting illegal acts. No such necessity exists in this case.

" * * *

"In sum, this court will not interfere with the right of the people of this state to contract freely and without needless limitation. *A rule of law which prevents parties from agreeing to pay the other's attorney fees, absent a statute or prior declaration of this court to the contrary, is outmoded, unjustified and paternalistic.*" (Emphasis added.) *Id.* at 36–37, 514 N.E.2d at 705–707.

The Stark County Court of Appeals, in following *Nottingdale,* recently extended the award of contractually based attorney fees to a case involving a *commercial* transaction. In *GMS Mgt. Co., Inc. v. K & K Indus., Inc.* (Apr. 29, 1991), Stark App. No. CA–8279, unreported, 1991 WL 70154, the landlord of a shopping center successfully sued its tenant for unpaid maintenance fees and was awarded attorney fees pursuant to a provision in the lease. On appeal, the appellate court explicitly held that attorney fees are recoverable in a *commercial transaction:*

"Although *Nottingdale* was specifically limited to a non-commercial transaction, we believe that it would be illogical to hold unenforceable a contractual provision

for the payment of attorney's fees in a commercial transaction where there is no evidence of unequal bargaining positions and no evidence of compulsion or duress. Accordingly, the trial court's award to appellant and against tenant should have triggered the attorney fee provision in Section 38 of said lease." *Id.* at 7.

*Nottingdale* was also followed and expanded recently in *Hilb, Rogal & Hamilton Agency of Dayton, Inc. v. Reynolds* (1992), 81 Ohio App.3d 330, 335–336, 610 N.E.2d 1102, 1106, where the court of appeals reversed a trial judge's refusal to enforce the payment of attorney fees for breach of an employee covenant not to compete. The court stated at 335–336, 610 N.E.2d at 1106:

"Nor does this court find that the holding in *Nottingdale* is limited to situations where the provision for attorney fees is found in declarations of condominium ownership and/or condominium bylaws in noncommercial circumstances, although the syllabus of the case specifically refers to such a situation.

" * * *

"The court in *Nottingdale* specifically pointed out that a majority of the states as well as the United States Supreme Court have already recognized the contract exception to the American Rule, and that the basis for enforcing the provision lies in the concept of freedom of contract. Thus, when the syllabus is read in conjunction with the text of the case, it is evident that the court intended to leave the freedom to contract in the hands of contractors without government interference. This intention, combined with the general holding of the case that a provision for reimbursement of *reasonable* attorney fees is enforceable, leads to the conclusion that such provisions in other contracts are indeed enforceable. We find no public policy which would contradict the enforcement of such a provision in the employment agreement in the present case. Accordingly, we find the appellants' first, second, third, fifth, and sixth assignments of error well taken." (Emphasis *sic.*)

This court has followed the holding of *Nottingdale* in awarding attorney fees allowed by contractual provisions. See *First Fed. Sav. Bank v. WSB Invest., Inc.* (1990), 67 Ohio App.3d 277, 586 N.E.2d 1159; *Georgetown of the Highlands Condominium Owners Assn. v. Yelsky* (Nov. 21, 1991), Cuyahoga App. No. 59410, unreported, 1991 WL 244471. We find the trial court properly awarded attorney fees in accordance with law.

This assignment of error is overruled.

*Judgment affirmed.*

NAHRA, P.J., and JAMES D. SWEENEY, J., concur.