[Cite as *Snowville Subdivision Joint Venture Phase I v. Home S. & L. of Youngstown, Ohio*, 2012-Ohio-1342.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 96675**

---

# SNOWVILLE SUBDIVISION JOINT VENTURE PHASE I, ET AL.

PLAINTIFFS-APPELLANTS

vs.

# HOME SAVINGS AND LOAN OF YOUNGSTOWN, OHIO

DEFENDANT-APPELLEE

---

**JUDGMENT:**
**AFFIRMED IN PART; REVERSED IN PART, AND REMANDED**

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-742470

**BEFORE:** Celebrezze, P.J., Keough, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** March 29, 2012

**ATTORNEYS FOR APPELLANTS**

Anthony R. Vacanti
David D. Drechsler
John P. Slagter
Buckingham, Doolittle & Burroughs, L.L.P.
1375 East Ninth Street
Suite 1700
Cleveland, Ohio   44114


**ATTORNEYS FOR APPELLEE**

Brad A. Sobolewski
Francis Floriano Goins
Ulmer & Berne, L.L.P.
Skylight Office Tower
1660 West 2nd Street
Suite 1100
Cleveland, Ohio   44113

Thomas M. Gacse
P.O. Box 1111
Youngstown, Ohio   44501

FRANK D. CELEBREZZE, JR., P.J.:

{¶1} Appellants include Snowville Subdivision Joint Venture Phase I ("Snowville"), South Brecksville Development Company ("SBDC"), Queenswood Developers, Inc. ("Queenswood"), Infinity Development of Ohio, Ltd. ("Infinity"), Parkview Financial Group, LLC, Anne Ream, Thomas Ream, Paul Ream, Robert Ream, and Richard Puzzitiello. They seek reversal of the dismissal of their complaint against Home Savings and Loan of Youngstown, Ohio ("HSLY"). Appellants argue that the trial court failed to properly apply the Civ.R. 12(B)(6) standard to their complaint. After a thorough review of the record and law, we affirm in part and reverse in part the decision of the trial court.

I. Factual and Procedural History

{¶2} Snowville and SBDC, the "Signing Appellants," entered into a construction loan agreement ("Loan Agreement") with HSLY on November 21, 2006, to fund the development of the "Woodlands of Snowville Subdivision" project in Brecksville, Ohio. SBDC and the remaining appellants, except Puzzitiello, were guarantors of the loan. The entirely new subdivision would consist of 54 lots in Phase I and an additional 64 lots in a future Phase II plan. The Loan Agreement called for appellants to complete construction of the Phase I improvements within one year of the date of the agreement. The

improvements included installation of utilities, roads, an off-site sanitary sewer facility, and any other improvements necessary to construct single family homes on the site.

{¶3} By November 21, 2007, the improvements were not complete but appellants continued to develop the site. HSLY continued to authorize draws as work was completed up to the date of maturity of the loan on November 21, 2009. After the balance became due, HSLY sent a letter to Snowville in December informing them that they were in default and that it was requesting payment of the entire balance. HSLY also executed cognovit note provisions in the Loan Agreement and obtained judgments against the guaranteeing appellants in March 2010.

{¶4} Prior to the maturity date of the loan, appellants attempted to exercise a one-year extension as set forth in the Loan Agreement. Section 4 of the agreement allowed for two one-year extensions of the maturity date upon written notice received 30 days before the expiration of the loan accompanied by the payment of a fee equal to one-quarter percent of the outstanding balance. On October 19, 2009, appellants sent an extension notice to HSLY, but did not submit payment until November 12, 2009. The extension provision also required that appellants not be in default of the Loan Agreement at the time of the extension.

{¶5} HSLY and Snowville also executed a sanitary sewer construction agreement ("Sewer Agreement") with the city of Brecksville (the "City") in November 2009. HSLY acknowledged that it held funds in an escrow account for Snowville to draw upon

to fund the construction of a sanitary sewer system for the development. The City agreed to contribute $400,000 to build the facility.

**{¶6}** After HSLY obtained cognovit judgments, appellants brought suit against HSLY for breach of the Loan Agreement, breach of good faith, negligent misrepresentation, promissory estoppel, and breach of the Sewer Agreement. HSLY filed a motion to dismiss, arguing that appellants could show no set of facts entitling them to relief. On April 11, 2011, the trial court granted HSLY's motion to dismiss, finding that appellants were in breach of the agreement since the 2007 completion date and had made no payments on the loan since the maturity date. Appellants then filed the instant appeal, listing one error for review:

> The trial court erred when it dismissed Appellants' Complaint for failure to state a claim upon which relief may be granted under Rule 12(b)(6) [sic] despite Appellants adequately setting forth factual allegations that support the claims contained in the Complaint and despite the trial court's obligation to presume the facts as alleged to be true.

## II. Law and Analysis

### A. Motion to Dismiss for Failure to State a Claim

{¶7} A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 605 N.E.2d 378 (1992). It is well settled that "when a party files a motion to dismiss for failure to state a claim, all factual allegations of the complaint must be taken as true and all reasonable inferences must be drawn in favor of the nonmoving party." *Byrd v. Faber*, 57 Ohio St.3d 56, 60, 565 N.E.2d 584 (1991).

{¶8} While the factual allegations of the complaint are taken as true, "[u]nsupported conclusions of a complaint are not considered admitted * * * and are not sufficient to withstand a motion to dismiss." *State ex rel. Hickman v. Capots*, 45 Ohio St.3d 324, 544 N.E.2d 639 (1989). In light of these guidelines, in order for a court to grant a motion to dismiss for failure to state a claim, it must appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *O'Brien v. Univ. Community Tenants Union*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975).

{¶9} This analysis was shifted by recent Supreme Court decisions addressing the federal notice pleading standard in Fed.Civ.R. 8, upon which Ohio's Civ.R. 8 pleading requirement is based. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 149, 173

L.Ed.2d 868 (2009). The Court held that bald legal conclusions did not constitute a well-pled complaint. In order to survive a motion to dismiss, the complaint must offer factual support for the legal conclusions drawn within. *Iqbal* at 1949. These holdings are similar to the rule enunciated in *Capots,* cited above. But the shift lies in the level of certainty of the complaint. Based on the above Ohio case law, plaintiffs must only show some set of facts that would entitle them to relief. *O'Brien* at 245.

**{¶10}** The Supreme Court has clarified the federal notice pleading standard — to survive a motion to dismiss, sufficient facts beyond a mere speculative level must be pled. *Twombly* at 555. A de novo standard of review applies to decisions on motions predicated on Civ.R. 12(B)(6). *NorthPoint Properties v. Petticord*, 179 Ohio App.3d 342, 2008-Ohio-5996, 901 N.E.2d 869, ¶ 11 (8th Dist.). A de novo standard of review affords no deference to the trial court's decision, and we independently review the record. *Gilchrist v. Gonsor*, 8th Dist. No. 88609, 2007-Ohio-3903, ¶ 16.

i. Breach of Contract

**{¶11}** Appellants argue that they sufficiently set forth a cause of action against HSLY for breach of contract as to the Loan Agreement. "[T]o prove a breach of contract, a plaintiff must establish the existence and terms of a contract, the plaintiff's performance of the contract, the defendant's breach of the contract, and damage or loss to the plaintiff." *Samadder v. DMF of Ohio, Inc*., 154 Ohio App.3d 770, 2003-Ohio-5340, 798 N.E.2d 1141, ¶ 27 (10th Dist.), citing *Powell v. Grant Med. Ctr.*, 148 Ohio App.3d 1, 2002-Ohio-443, 771 N.E.2d 874, ¶ 27 (10th Dist.).

{¶12} In their complaint, appellants alleged that HSLY breached the contract because the maturity date of the loan was extended and, through acquiescence or waiver, HSLY agreed to extend the construction completion date. Appellants also allege that HSLY breached the Sewer Agreement because it no longer held funds for appellants to complete construction of a sanitary sewer system for one year from the date the Sewer Agreement was executed.

{¶13} HSLY argues that a waiver provision contained in Section 14 of the Loan Agreement indicates that any waiver must be in writing to be effective and any action or inaction on its part did not waive any rights it had under the agreement. The Loan Agreement contains a traditional anti-waiver clause that states:

> No waiver of any Event of Default shall extend to or affect any subsequent Event of Default or shall impair any rights, remedies and/or powers available to lender. No single or partial exercise of any right, remedy or power shall preclude other or further exercise thereof by [HSLY].

The Loan Agreement also contains a waiver clause that requires appellants to obtain advance written permission should they fail to meet a condition. This provision states:

> Any of the acts that [the Signing Appellants are] required to do or prohibited from doing by any of the provisions of this Agreement may, notwithstanding such provisions, be omitted or done, as the case may be, only if [HSLY] by an instrument in writing, has given [HSLY's] prior consent thereto.

{¶14} This court has recently held that written waiver provisions are valid and enforceable in Ohio. "Ohio law is very clear that a contract that expressly provides that it may not be amended, modified, or waived except in writing executed by the parties is not subject to oral modification." *Kelley v. Ferraro*, 188 Ohio App.3d 734,

2010-Ohio-2771, 936 N.E.2d 986, ¶ 39 (8th Dist.), citing *Freeman-McCown v. Cuyahoga Metro. Hous. Auth.*, 8th Dist. Nos. 77182 and 77380, 2000 WL 1594090 (Oct. 26, 2000); *Rosepark Properties, Ltd. v. Buess*, 167 Ohio App.3d 366, 2006-Ohio-3109, 855 N.E.2d 140, ¶ 38 (10th Dist.); *Chiaverini, Inc. v. Jacobs*, 6th Dist. No. L-06-1360, 2007-Ohio-2394, ¶ 24; *Fultz & Thatcher v. Burrows Group Corp.*, 12th Dist. No. CA2005-11-126, 2006-Ohio-7041, ¶ 17.

{¶15} However, even with such a written waiver provision, HSLY, through its actions, may waive a requirement under the agreement. Discussing no-oral-modification clauses, the Twelfth District reasoned,

> if such clauses are rigidly enforced, then a party could simply insert the clause into an agreement and would be magically protected in the future no matter what that party said or did. More simply, by including a no-oral-modification clause in a contract, a party could orally induce the opposing party in any way and then hide behind the clause as a defense. (Internal citations omitted.) *Fields Excavating, Inc. v. McWane, Inc.*, 12th Dist. No. CA2008-12-114, 2009-Ohio-5925, ¶ 17, citing *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 381, 122 N.E. 378 (1919).

HSLY may have acquiesced when the improvements were not completed in 2007 when making disbursements. According to appellants' complaint, HSLY continued to make disbursements even though a condition precedent to any disbursement was that appellants not be in breach of the agreement. Based on these arguments and the facts alleged in appellants' complaint, it is difficult to conclude that, as a matter of law, HSLY did not waive the requirement in the contract that improvements be completed by 2007.

{¶16} HSLY argues that its mere silence cannot be construed as a waiver, especially in light of the anti-waiver provisions. Under the Loan Agreement, a

precondition to any disbursement of funds from Snowville's loan account was that appellants not be in breach. HSLY made disbursements after 2007, indicating they were waiving the requirement for completion of improvements for loan disbursements. This is more than mere silence. However, its waiver in one instance does not act to relinquish its rights to enforce other contract provisions according to the anti-waiver provision.

{¶17} The waiver must be clear and unequivocal if it contradicts a written contract provision. If it is, a written waiver provision, just like any other provision in a contract, can be waived by actions of the parties. *Glenmoore Builders, Inc. v. Smith Family Trust*, 9th Dist. No. 24299, 2009-Ohio-3174, ¶ 41. Based on appellants' complaint, HSLY did not enforce the completion date for the improvements or object when appellants continually failed to timely complete goals under the Loan Agreement. HSLY continued to make disbursements under the Loan Agreement.

{¶18} Appellants also claim that an agreement entered into between them,[1] HSLY, and the City indicates that the completion date for the improvements was extended at least until November 2010. This Sewer Agreement states, in part:

---

[1] This agreement was signed by representatives of HSLY, the City, and Snowville through Queenswood and Infinity; and by Robert Ream and Richard Puzzitiello individually.

[HSLY] agree[s] as follows:

1. The disbursement of funds by [HSLY] from [Snowville's] ACCOUNT with respect to the payment of any and all statements for labor and materials in connection with the aforesaid improvements of Phase I of the Woodlands of Snowville Subdivision and the improvement plans therefore, shall be made only upon receipt by [HSLY] of payment certificates from the Project Engineer, approved by [Snowville] and the Engineer of City, that said certificates reflect the reasonable cost and reasonable value of the completion of the development, as verified by [HSLY], to the date of each disbursement. Upon receipt of said payment certificate and upon its own verification, [HSLY] shall then make the appropriate disbursement of funds.

{¶19} The agreement went on to give appellants until November 2010 to complete the sewer treatment facility, or the City could take over construction and receive compensation from an escrow account held by HSLY. Even if we assume that appellants are correct that the Sewer Agreement evidences a waiver of the completion date, they would still be in breach of the Loan Agreement because the maturity date occurred without appellants repaying the loan.

{¶20} Appellants argue that the Sewer Agreement also extended the maturity date by at least a year because, within that agreement, the City and appellants agreed that installation of the sewer treatment facility would be completed within one year or the City

could complete the project on its own and HSLY would pay the City for the cost of construction from appellants' loan account. Appellants argue that this Sewer Agreement, entered into less than a month before HSLY sent appellants a notice of default, modified the maturity date of the loan. However, in the Sewer Agreement, HSLY never promised to provide funds to appellants for construction. If anyone had a claim against HSLY from the Sewer Agreement it would be the City if it had taken over construction, but the Sewer Agreement does not constitute a clear promise on the part of HSLY to continually advance funds to appellants outside the terms of the Loan Agreement. Therefore, the Sewer Agreement did not evidence a clear intent to extend the maturity date of the loan.

{¶21} Appellants have also asserted that the loan was not due because they validly exercised a provision of the Loan Agreement allowing them to extend the maturity date for one year. Section 4 of the Loan Agreement states:

> Provided that at the time of such exercise, no Event of Default or Possible Default * * * then exists hereunder or under any other Loan Document, Borrower shall have two (2) options to extend the term of the Loan (each an "Extension Option"). Each extension option shall be for a period of an additional twelve (12) months thereafter. * * * Borrower shall exercise the first Extension Option by providing written notice of such exercise to [HSLY] no less than thirty (30) days prior to the Maturity Date. * * *
>
> Contemporaneously with the exercise of each Extension Option, Borrower will pay to [HSLY] an extension fee in an amount equal to one quarter of one percent (1/4%) of the outstanding principal balance of the Loan.

{¶22} Appellants attached documentation to their complaint indicating they sent an extension notice on October 19, 2009, and that they submitted the required payment on November 12, 2009, which was processed and accepted by HSLY on November 16,

2009. Based on the facts pled, and accepting their accuracy, appellants have established they may have validly extended the maturity date of the loan. If HSLY accepted the payment, it could waive the requirement within the extension clause stating that no condition of default exist at the time of the extension. "[W]aiver of a contract term can occur when a party conducts itself in a manner inconsistent with an intention to insist on that term." *Vivi Retail, Inc. v. E & A N.E. Ltd. Partnership*, 8th Dist. No. 90527, 2008-Ohio-4705, ¶ 30, citing *Convenient Food Mart Inc. v. Atwell*, 11th Dist. No. 2003-L-174, 2005-Ohio-704.

{¶23} HSLY argues that it did not accept the payment and refused to extend the maturity date. However, that argument relies on evidence outside of the complaint. The court could have converted the motion to dismiss to one for summary judgment to rely on this evidence of refusal to extend the maturity date, but from the face of the complaint it appears that HSLY accepted payment of the fee it required to extend the loan for one year. Appellants have put forth a set of facts supported by evidence indicating the maturity date of the loan was extended.

{¶24} Based on appellants' arguments in their complaint that they validly exercised an option to extend the maturity date of the Loan Agreement and that HSLY waived the completion date of the improvements, the trial court erred in dismissing appellants' claim for breach of the Loan Agreement. They have sufficiently plead such a claim in order to survive a motion to dismiss for failure to state a claim.

ii. Good Faith and Fair Dealing

**{¶25}** Appellants also allege in their complaint that HSLY owed them a duty to operate in good faith and that HSLY breached that duty by calling the loan due.

**{¶26}** Ohio's codification of the Uniform Commercial Code ("UCC") includes a duty to act in good faith. R.C. 1301.304, formerly R.C. 1301.09, states, "[e]very contract or duty within [the UCC] imposes an obligation of good faith in its performance and enforcement." R.C. 1301.201 defines good faith as "honesty in fact and the observance of reasonable commercial standards of fair dealing." A breach of a duty to act in good faith requires this court to "determine whether any alleged acts were 'commercially unjustifiable.'" *Needham v. The Provident Bank,* 110 Ohio App.3d 817, 831, 675 N.E.2d 514 (8th Dist.1996). However, Ohio courts have repeatedly held that "a lender does not act in 'bad faith' when it decides to enforce its contract rights." *Id.* at 831-832, citing *Metro. Life Ins. Co. v. Triskett Illinois, Inc.*, 97 Ohio App.3d 228, 646 N.E.2d 528 (1st Dist.1994); *Gaul v. Olympia Fitness Ctr., Inc.*, 88 Ohio App.3d 310, 623 N.E.2d 1281 (8th Dist.1993); *Bennco Liquidating Co. v. Ameritrust*, 86 Ohio App.3d 646, 621 N.E.2d 760 (8th Dist.1993); *First Fed. S. & L. Assn. of Akron v. Cheton & Rabe*, 57 Ohio App.3d 137, 567 N.E.2d 298 (9th Dist.1989); *Third Natl. Bank & Trust Co. v. Sinder*, 2d Dist. No. 9995, 1987 WL 12965 (June 18, 1987).

**{¶27}** HSLY was operating under the provisions of the Loan Agreement when it called the loan due. Appellants claim that HSLY owes them some heightened duty outside the four corners of the contract because HSLY is their banker. However, the

contract specifically provides that "[HSLY] shall not have any fiduciary responsibilities to [appellants]. [HSLY] undertakes no responsibility to [appellants] to review or inform [them] of any matter in connection with any phase of [their] business or operations." Further, "the relationship between a creditor and debtor is not a fiduciary one, but is one governed by freedom of contract." *Needham* at 828, 675 N.E.2d 514, citing *Stone v. Davis*, 66 Ohio St.2d 74, 78, 419 N.E.2d 1094 (1981).

{¶28} All of appellants' allegations of breach of a duty of good faith are actually arguments going to a breach of the Loan Agreement. HSLY acted to enforce its rights under the Loan Agreement. As other Ohio courts have found, that is not akin to a breach of good faith. *Triskett*, 97 Ohio App.3d 228, 646 N.E.2d 528; *Gaul*, 88 Ohio App.3d 310, 623 N.E.2d 1281. No actions taken by HSLY were commercially unreasonable. "Firms that have negotiated contracts are entitled to enforce them to the letter, even to the great discomfort of their trading partners, without being mulcted for lack of 'good faith.'" *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir.1990).

{¶29} While appellants have set forth sufficient facts for a breach of contract action, they have failed to state a claim for breach of a duty of good faith. From the scant record, it appears that HSLY provided appellants with as much leeway as possible to complete the project until, in its eyes, the loan became due.

### iii. Negligent Misrepresentation

**{¶30}** The Ohio Supreme Court has stated the elements of a claim for negligent misrepresentation:

> "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." (Emphasis sic.) *Delman v. Cleveland Hts.*, 41 Ohio St.3d 1, 4, 534 N.E.2d 835 (1989), quoting 3 Restatement of the Law 2d, Torts 126-127, Section 552(1) (1965).

**{¶31}** "A negligent misrepresentation does not lie for omissions; there must be some affirmative false statement." *Manno v. St. Felicitas Elementary School,* 161 Ohio App.3d 715, 2005-Ohio-3132, 831 N.E.2d 1071, ¶ 34 (8th Dist.), citing *Leal v. Holtvogt*, 123 Ohio App.3d 51, 62, 702 N.E.2d 1246 (2d Dist.1998), citing *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 149, 684 N.E.2d 1261 (9th Dist.1996). Here, HSLY did not supply false information.

**{¶32}** In the Sewer Agreement, HSLY acknowledged that it held over $3 million in a loan account for Snowville. It did not affirmatively state that this money would be available if appellants breached the Loan Agreement. The statements made in the Sewer Agreement were true at the time they were made. This was before the loan reached its natural maturity date, and appellants did not secure a clear and unequivocal extension of that date in the Sewer Agreement. No untrue statement was made in this case. Therefore, the trial court did not err in granting HSLY's motion to dismiss the negligent misrepresentation claim.

## III.   Conclusion

**{¶33}** A motion to dismiss requires that no plausible claim be stated in the complaint entitling the plaintiff to relief.   There are issues that, if borne out in the course of this litigation, could result in appellants obtaining judgment against HSLY. Therefore, the trial court erred in dismissing appellants' claim for breach of contract against HSLY.

**{¶34}** This cause is affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellants and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
MARY EILEEN KILBANE, J., CONCUR