SOCIETY NATIONAL BANK, Appellee,

v.

VAL HALLA ATHLETIC CLUB AND RECREATION
CENTER, INC. et al., Appellants.

[Cite as *Society Natl. Bank v. Val Halla Athletic Club
& Recreation Ctr., Inc.* (1989), 63 Ohio App.3d 413.]

Court of Appeals of Ohio,
Summit County.

No. 13980.

Decided June 28, 1989.

**414**

*Frederick M. Lombardi* and *Robert A. Hager,* for appellee.

*Russell M. Pry,* for appellants.

EDWARD J. MAHONEY, Presiding Judge.

Appellant Val Halla Athletic Club and Recreation Center, Inc. ("Val Halla")[1] appeals from the trial court's order of December 28, 1988 denying Val Halla's motion to vacate a cognovit judgment entered in favor of Society

---

[1]  Plaintiff-appellee Society National Bank filed its complaint for cognovit judgment against Val Halla and nine individual shareholders including Norm Dietrich, president, and Vernon Dietrich, vice president.  Society also named as defendants, the state of Ohio Department of Taxation, F.W. Flory Co. and Continental Electric Co.  The latter have not appealed.

National Bank ("Society") by confession, on warrant of attorney, without antecedent process. We affirm.

## Facts

On May 12, 1983, Val Halla and its nine shareholders negotiated a $650,000 promissory note with Centran Bank.[2] By the terms of the agreement, payments of $4,513.88 were to be made on the fifteenth day of each month with payments to begin on June 15, 1983.

By August 21, 1985, Society found Val Halla to be in default and demanded payment in full pursuant to the provisions of the May 1983 agreement. Val Halla requested that Society extend the terms of the original note and forbear suit. Society agreed to defer $68,531.66 of delinquent interest until note maturity, and new payment terms were established as follows:

"July 1, 1985—June 30, 1986—$6,000 per month

"July 1, 1986—June 30, 1987—$7,000 per month

"July 1, 1987—June 30, 1988—$8,000 per month

"All remaining amounts of principal and interest accumulated on said NOTE shall be due and paid in full on or before July 31, 1988."

Included in the record is a letter dated May 24, 1988 from Society to Val Halla[3] which in pertinent part, states as follows:

"This is in response to the meeting of April 1, 1988, between the Bank and Val Halla and also your letter of May 11, 1988. The Bank's position with respect to Val Halla's delinquencies and defaults, considering the various issues discussed at the April 1 meeting and your letter of May 11, is as follows:

"* * * *

"3. All payments presently in default through the June 1, 1988 payment are to be deferred with payments of $7,000 per month to commence on July 1, 1988."

---

**2.** Centran Bank was Society's predecessor in interest. All subsequent agreements were either prepared by Centran or Society depending on the time frame during which they were prepared. Any further references to agreements between the parties will refer to Society as the plaintiff/appellee.

**3.** Thomas H. Eaton, Jr., Assistant Vice President of Credit Administration handled the Val Halla affairs on behalf of Society. Eaton addressed the letter to Val Halla's counsel but included copies to Society's counsel and each of the nine shareholders who were signatories to each of the agreements between Society and Val Halla.

Following negotiations, a new agreement was reached on September 9, 1988. The agreement, signed by all the parties, included the following language:

"3. Starting on August 1, 1988, the Signatories will pay the Bank $7,000 per month until all principal, interest and other payments owing under the $650,000 Loan are fully repaid."

The agreement also included a clause which expressly stated that the bank waived none of its rights and would allow Val Halla's indebtedness to remain outstanding providing there were no additional defaults, including late payment. The agreement also stated that default in the terms and conditions of any of the agreements would immediately accelerate the maturity of all existing liabilities. Society would be entitled to all of the remedies described in the September 1988 agreement and all those which were incorporated by reference from the other agreements—including the confession of judgment, on warrant of attorney, without antecedent process.

Val Halla's delinquent payments continued. On September 17, 1988, Norman Dietrich received a letter from Thomas Eaton which read, in part as follows:

"You are in default under the terms of our September 9, 1988 Forbearance Agreement. This letter is a demand for immediate payment under the terms of that Agreement.

"Failure to pay immediately may force the Bank to foreclose on it's [*sic*] loan to you.

"Please be advised that should you make immediate payment, your next payment would then be due on October 1, 1988."

October 1, 1988, Val Halla submitted its September payment. On October 3, 1988, Eaton, per letter, advised Dietrich as follows:

"This will acknowledge your representation the September payment was made on October 1, 1988. Please note your September, 1988 payment was in default under September 9, 1988 Forbearance Agreement.

"You indicated that you would not be able to make October, 1988 payment at this time. This is to advise you, the bank will no longer tolerate further delinquency. We will declare the entire balance due and payable and proceed with whatever legal remedies are available, if the October 1, 1988 payment is not made by October 10, 1988."

On October 29, 1988, Dietrich finally submitted the same mortgage payment which Eaton had demanded by October 10, 1989. Between the affidavits submitted by Dietrich and Eaton in support or in opposition to the motion to vacate, respectively, a factual dispute arises as to their conversation. Dietrich

swore that he had telephoned Eaton on October 7, 1988 to tell him that he would make the October payment by the end of the month. Dietrich claims that Eaton voiced no objection to this payment. Eaton claims that he spoke with Dietrich on October 3 and that it was in response to that conversation that the letter dated October 3, 1988 was sent to Dietrich.

The October 29, 1989 payment was negotiated by Society. In Eaton's affidavit, he indicated that this negotiation was done through inadvertence and oversight and that:

" * * * Affiant had written Society National Bank, Cleveland to inform them not to accept any further late payments, but notice was not received of the receipt of the October payment until early November 1988. Upon direction from Affiant, Society National Bank, Cleveland wrote their check payable to the Defendant Val Halla, and the same was mailed to them in order to return that payment."

On November 3, 1988, Society took judgment on the note without notice to Val Halla pursuant to the warrant of attorney to confess judgment contained in the note.

In the complaint for the cognovit judgment, Society alleged that the basis for Val Halla's default was non-payment of the note. In Val Halla's timely motion to vacate, Val Halla asserted payment as a defense and argued that the judgment was obtained through misrepresentation of the facts. In its opposition to the motion, Society acknowledged its error in the complaint and stated that Val Halla had defaulted by virtue of its delinquent payments, not non-payments.

Based on the record which included the pleadings, briefs, affidavits, agreements and certain letters already cited in this opinion, the trial court denied Val Halla's motion to vacate. The trial court found that Val Halla failed to demonstrate any entitlement to relief under the guidelines set forth in *GTE Automatic Electric v. ARC Industries* (1976) 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113.

In challenging this decision, Val Halla assigns one error in this appeal.

### Assignment of Error

"The trial court abused its discretion in finding defendants' motion to vacate without merit since such order was not based upon the pleadings, was not based upon the applicable Ohio law, and was not based upon any specific findings of fact."

A movant under Civ.R. 60(B) must overcome a heavy burden to obtain relief. Under ordinary circumstances, the movant must demonstrate that

" * * * (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after judgment, order or proceeding was entered or taken." *GTE, supra,* at paragraph two of the syllabus.

This burden is somewhat lessened when the judgment the movant seeks to vacate has been taken by confession on warrant of attorney without prior notice. *McCullough v. Luteman* (1919), 15 Ohio App. 207, 209, 32 Ohio C.C. (N.S.) 168, 170. In such a situation, the existence of a *valid* defense would constitute grounds for relief. *Matson v. Marks* (1972), 32 Ohio App.2d 319, 61 O.O.2d 476, 291 N.E.2d 491; *Prinz v. Horvat* (Mar. 1, 1989) Summit App. No. 13708, unreported, 1989 WL 16908. Thus, if Val Halla sets forth operative facts, which, if proven, would give rise to a meritorious defense and support the alleged grounds upon which it seeks relief, then the judgment would be vacated. *BancOhio Natl. Bank v. Schiesswohl* (1988), 51 Ohio App.3d 130, 554 N.E.2d 1362.

■ To reverse the denial of a motion for relief under Civ.R. 60(B), we must find that the lower court abused its discretion. The trial court abuses its discretion when it does not grant a hearing on the motion where the movant alleges operative facts which would warrant relief under Civ.R. 60(B). *Adomeit v. Baltimore* (1974), 39 Ohio App.2d. 97, 68 O.O.2d 251, 316 N.E.2d 469. Operative facts are those facts which if proven would give rise to a meritorious defense. The evidentiary materials must present operative facts and not mere general allegations to justify relief. *Hornyak v. Brooks* (1984), 16 Ohio App.3d 105, 106, 16 OBR 111, 112, 474 N.E.2d 676, 677, citing *East Ohio Gas Co. v. Walker* (1978), 59 Ohio App.2d 216, 13 O.O.3d 234, 394 N.E.2d 348. Where, as here, the motion is adequately supported by affidavits and exhibits, an oral hearing is not required. See *Matson v. Marks, supra.* If the movant provides credible evidence from which reasonable minds might reach different conclusions upon the issue involved, then a court abuses its discretion when it does not suspend the judgment pending a trial on the merits. In that determination, the trial court should not determine the credibility of witnesses or weigh the evidence. *Livingstone v. Rebman* (1959), 169 Ohio St. 109, 8 O.O.2d 109, 158 N.E.2d 366. Applying that test to the record before us, we can not find an abuse of discretion. Let us now examine Val Halla's contentions.

■ First, Val Halla contends that the trial court was required to issue factual findings. Absent such findings, Val Halla challenges the decision as arbitrary under the standards set forth in *Griffey v. Rajan* (1987), 33 Ohio

St.3d 75, 514 N.E.2d 1122. We disagree. *Griffey* discusses the standards in excusable neglect cases and is inapplicable here. The trial court properly set forth the *GTE* test and stated:

"Upon consideration of the briefs and evidentiary materials submitted with the briefs for the present motion, as well as the previous pleadings filed in this case, the Court determines that Defendants have failed to demonstrate they are entitled to relief under the GTE guidelines, above.

"Accordingly, the Court finds Defendants' motion to be without merit. It is, therefore, denied.

"It is so ordered."

It is a decision with which we agree. Further, the operative facts are such that, no material factual question[4] was raised which would have created a duty to grant an oral hearing or suspend the judgment. *Livingstone v. Rebman, supra.* Val Halla asserted nothing which was not already part of the record before the court, nor does it now argue that it would have presented evidence in addition to that which was already before the court.

■ Admittedly, the trial court's analysis does not set forth which of the elements, under the *GTE* test that Val Halla failed to adequately demonstrate. Since timeliness of the motion is not at issue, we turn next to Val Halla's argument that it has adequately raised the grounds for relief under Civ.R. 60(B)(3). The cognovit judgment was based on Society's allegations that Val Halla had failed to make payments on the note. Val Halla correctly points out that this is a misrepresentation of the facts as contemplated under Civ. 60(B)(3) and would constitute grounds for relief.[5] However, this alone will not result in a vacation of judgment.

■ Val Halla now reaches its final hurdle where we must determine whether or not Val Halla has a meritorious defense. Our analysis of this element contemplates the lesser burden placed on a movant seeking to vacate a cognovit judgment. *McCullough v. Luteman, supra.*

In addition to its consideration of the faulty complaint, the trial court perused all the documents, letters, exhibits and briefs of the parties prior to

---

**4.** The differences between Dieterich and Eaton as to the nature of this conversation are immaterial as the lateness of the payment is undisputed.

**5.** Civ.R. 60(B)(3) reads as follows:
" * * * On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons:
" * * *
" * * * (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party * * *."

making its decision to deny Val Halla's motion to vacate. From our review, we agree with the trial court that Val Halla has failed to meet this element. Late payment is not a valid defense. Both parties acknowledge that the October 29 payment was actually due on October 10. It is likewise undisputed that the October 29 payment was in fact refunded subsequent to the November 3, 1988 filing of the complaint. Timeliness was of the essence in the September 9, 1988 agreement.

Although Val Halla frequently calls our attention to the fact that the judgment was taken without notice, it was not one which came as a surprise. Val Halla habitually tendered late payments and was informed that late payments constituted a default. Due to the defaults, the original note was renegotiated several times. Each agreement stated or incorporated by reference the terms under which a cognovit judgment would be taken. At no time did Society waive its rights to seek such remedies as were available to it under the law. Rather, the record clearly establishes that Val Halla made a knowing intelligent and voluntary waiver of its right to notice before judgment. *D.H. Overmyer Co. v. Frick Co.* (1972), 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124.

Val Halla also argues that even if it failed to make timely mortgage payments, Society's long practice of accepting late payments resulted in a waiver. From the facts before it, the trial court could readily conclude that reasonable minds could only find an absence of evidence that Society relinquished any rights to payment or to proceed to judgment. See *White Co. v. Canton Transp. Co.* (1936), 131 Ohio St. 190, 198, 5 O.O. 548, 551, 2 N.E.2d 501, 504; *Gates v. Norris* (Sept. 14, 1988), Summit App. No. 13445, unreported, 1988 WL 95875. In fact, Val Halla was clearly on notice that it was to strictly comply with the agreement.

Given the specific facts before the court, the long and well documented record of dealings between the parties, we find that reasonable minds could only conclude that Val Halla's defense lacks merit. See *Livingstone v. Rebman, supra*. We overrule this assignment of error and affirm the decision of the trial court.

*Judgment affirmed.*

REECE, J., concurs.

QUILLIN, J., dissents.

QUILLIN, Judge, dissenting.

The law does not favor cognovit judgments. It merely tolerates them.

The majority, I fear, has not applied the correct standard of review. The question is not whether the trial court abused its discretion in not suspending operation of the judgment. Rather, the evidence, pro and con, must be examined as if on a motion for a directed verdict. If reasonable minds could reach different conclusions, the trial court *must* grant relief. See *Livingstone v. Rebman* (1959), 169 Ohio St. 109, 8 O.O.2d 109, 158 N.E.2d 366; *Matson v. Marks* (1972), 32 Ohio App.2d 319, 61 O.O.2d 476, 291 N.E.2d 491.