[Cite as *Home S. & L. of Youngstown v. Snowville Subdivision*, 2012-Ohio-4594.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.    97985

# HOME SAVINGS AND LOAN OF YOUNGSTOWN, OHIO

PLAINTIFF-APPELLEE

vs.

# SNOWVILLE SUBDIVISION JOINT VENTURE PHASE I, ET AL.

DEFENDANTS-APPELLANTS

## JUDGMENT:
## REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CV-722294

**BEFORE:**   Boyle, J., Blackmon, A.J., and Keough, J.

**RELEASED AND JOURNALIZED:**   October 4, 2012

**ATTORNEYS FOR APPELLANTS**

David D. Drechsler
John P. Slagter
Anthony R. Vacanti
Buckingham, Doolittle & Burroughs
1375 East Ninth Street
Suite 1700
Cleveland, Ohio    44114

**ATTORNEYS FOR APPELLEE**

Frances Floriano Goins
Brad A. Sobolewski
Matthew T. Wholey
Ulmer & Berne LLP
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, Ohio    44113-1448

Thomas M. Gacse
P.O. Box 1111
Youngstown, Ohio    44501

MARY J. BOYLE, J.:

**{¶1}** Defendants-appellants, Snowville Subdivision Joint Venture Phase I ("Snowville"), South Brecksville Development Company ("South Brecksville"), and several other entities and individuals[1] (collectively referred to as "Developers") appeal from a judgment denying their motion to vacate cognovit judgments against them that were obtained by plaintiff-appellee, Home Savings and Loan of Youngstown, Ohio ("Home Savings"). They raise two assignments of error for our review:

> [1.] The trial court erred by engaging in a mini-trial on the merits instead of granting the motion to vacate based on specific operative factual allegations set forth in the motion to vacate and attached affidavit.

> [2.] The trial court erred when it denied appellants' motion to vacate despite the operative facts set forth in the motion to vacate, attached affidavit, and the two-day hearing.

**{¶2}** Finding merit to Developers' second assignment of error, we reverse and remand.

<u>Procedural History and Factual Background</u>

**{¶3}** In March 2010, Home Savings filed a complaint upon a cognovit note against Developers. According to the complaint, Home Savings agreed to loan Snowville and South Brecksville $9,032,000 to develop land in Brecksville, Ohio, known as The Woodlands of Snowville ("Woodlands"). Phase I of the development involved

---

[1] Snowville Subdivision Joint Venture Phase I ("Snowville"), South Brecksville Development Company ("South Brecksville"), Queenswood Developers, Inc. ("Queenswood"), Infinity Development of Ohio, Ltd. ("Infinity"), Parkview Financial Group, LLC, Anne Ream, Thomas Ream, Paul Ream, and Robert Ream.

constructing single family homes on 54 lots; 64 lots would be developed in future phases.

{¶4} Snowville and South Brecksville executed a cognovit promissory note on November 21, 2006, where they agreed to make interest only payments to Home Savings until November 21, 2009, after which the entire unpaid principal balance with all accrued interest was due and payable in full. The other appellants guaranteed the loan.

{¶5} Under the Loan Agreement, Phase I improvements were to be completed within one year of the agreement, by November 21, 2007. The Phase I improvements included installation of utilities, roadways, and other infrastructure improvements, including an off-site sanitary sewer facility.

{¶6} By November 21, 2007, the improvements were not completed. In fact, none of the actual physical work was done in 2007. Chris Bender, president of land development for Park Group Companies of America (he signed the Loan Agreement on behalf of Snowville), testified that they ran into many obstacles from the city of Brecksville, the county, and the Environmental Protection Agency due to the Woodlands' close proximity to the Cuyahoga Valley National Park and Cuyahoga River. Bender stated that the work began in March 2008 and continued through November 2008, with the bulk of it being done in the summer of 2008.

{¶7} Bender testified that throughout 2008, Home Savings approved Developers' requests for money to pay subcontractors. Bender explained that Developers would receive an invoice from subcontractors as work was completed. Developers would then submit a "draw request" in writing to Home Savings, along with an affidavit of intent to

pay the invoice. Home Savings authorized several draws in 2008 as work was completed, in the amounts of $100,000, $197,000, $216,000, $80,000, $145,000, and $168,000. Developers did not request any draws in 2009 because they were contributing their own funds to the project so that the loan would remain in balance (meaning that the balance remaining on the loan would cover the cost of the work remaining on the Phase I improvements).

{¶8} The city of Brecksville ("City"), Home Savings, and Developers were parties to an agreement ("Escrow Agreement") dated November 17, 2009. Under the Escrow Agreement, Home Savings "agreed to hold on deposit and in escrow on behalf of Developer[s] a credit balance" of $3,634,600 "for the purpose of constructing and installing sanitary trunk sewer lines, water trunk lines, storm sewer lines, sanitary sewer lines, the construction of storm water storage and detention facilities, water mains and appurtenances thereto," and construction of "deep strength asphalt pavement," with concrete curbs, gutters, sidewalks, and other "appurtenances incident to a street." Per the Escrow Agreement, the City would contribute $400,000 toward the construction of the sanitary sewer. Further, under the Escrow Agreement, Developers had 12 months to complete the project.

{¶9} There is no dispute that Developers made timely interest payments as required under the Loan Agreement, from the loan's inception through December 2009. On December 23, 2009, however, Home Savings sent a letter to Developers informing them that they were in default because (1) Phase I completions were not done by November 21, 2007, and (2) Developers had "experienced a material adverse change" in

their financial condition since the inception of the loan. Home Savings further notified Developers that it was terminating the loan and would not make any further advances. Home Savings filed its cognovit complaint three months later in March 2010.

{¶10} Home Savings alleged in its complaint that Developers had defaulted on the loan and owed it $5,047,975.40 plus accrued interest of $68,425.65, plus late fees, at an interest rate of 5.32 percent per annum from March 3, 2010. Home Savings received a cognovit judgment on the note upon filing the complaint.

{¶11} Developers immediately moved to stay execution of the cognovit judgment (which the trial court granted), and moved to vacate the judgment. In their motion to vacate, Developers alleged that Home Savings, through acquiescence or waiver, agreed to extend the construction completion date, thereby extending the maturity date of the loan. Developers further alleged that they properly exercised an option under the Loan Agreement to extend the maturity date of the loan for one year, until November 21, 2010, by giving written notice to Home Savings and tendering an "extension check," which was accepted by Home Savings.

{¶12} After a two-day hearing in January 2011, the trial court denied the Developers' motion to vacate. It is from this judgment that Developers appeal.

Developers' Case Against Home Savings

{¶13} Before we get to the arguments in the present case, we must discuss a related case (Developers' case against Home Savings) because — as all parties in the present case agree (although they disagree as to how) — it is relevant to the analysis here.

{¶14} In November 2010, Developers filed a complaint against Home Savings for breach of the Loan Agreement, breach of good faith, negligent misrepresentation, promissory estoppel, and breach of the Escrow Agreement. *See Snowville Subdivision Joint Venture Phase I, et al. v. Home S. & L. of Youngstown*, Cuyahoga C.P. No. CV-742470. Developers' case against Home Savings was assigned to a different judge than the Home Savings' cognovit case against Developers (the case at issue in the present appeal). Developers moved to consolidate the two cases, but the trial court denied their motion. Upon Home Savings' motion, however, Developers' case against Home Savings was transferred to the commercial docket.

{¶15} Home Savings moved to dismiss Developers' case, claiming that Developers failed to state a claim for relief. The trial court agreed and dismissed Developers' case. Developers appealed to this court. *See Snowville Subdivision Joint Venture Phase I, et al. v. Home S. & L. of Youngstown*, 8th Dist. No. 96675, 2012-Ohio-1342. This court agreed with the trial court that Developers failed to state a claim for breach of duty of good faith and fair dealing and negligent misrepresentation, but we disagreed with the trial court regarding Developers' breach of contract claims. *Id.* at ¶ 24, 29, and 32. We determined that Developers sufficiently plead a claim for breach of contract in their complaint because they asserted that they validly exercised an option to extend the November 2009 maturity date of the Loan Agreement and that Home Savings waived the November 2007 completion date of the Phase I improvements. *Id.* at ¶ 24. We will further discuss this related case in our analysis of Developers' second assignment of error.

Motion to Vacate

{¶16} Civ.R. 60(B) applies to relief from all judgments, including cognovit judgments. *Adomeit v. Baltimore*, 39 Ohio App.2d 97, 316 N.E.2d 469 (8th Dist.1974), paragraph one of the syllabus. In general, to prevail on a motion for relief from judgment brought pursuant to Civ.R. 60(B), "the moving party must demonstrate that '(1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time[.]'" *Cuyahoga Support Enforcement Agency v. Guthrie*, 84 Ohio St.3d 437, 440, 705 N.E.2d 318 (1999), quoting *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976).

{¶17} This test is modified, however, when a party is seeking relief from a cognovit judgment. Because the judgment debtor is not afforded notice or the opportunity to answer the complaint prior to the entry of a cognovit judgment, the judgment debtor is not required to show entitlement to relief under one of the specific grounds listed under Civ.R. 60(B). *See Medina Supply Co. v. Corrado*, 116 Ohio App.3d 847, 850-851, 689 N.E.2d 600 (8th Dist.1996), citing *Soc. Natl. Bank v. Val Halla Athletic Club & Recreation Ctr., Inc.*, 63 Ohio App.3d 413, 579 N.E.2d 234 (9th Dist.1989). "Therefore, a party seeking relief from a cognovit judgment is only required to demonstrate the existence of a meritorious defense and that the motion is made within a reasonable time." *Id.*

{¶18} With regard to the first element of the *GTE* test, a moving party need only allege a meritorious defense; it need not prove that it will prevail on that defense. *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 20, 520 N.E.2d 564 (1988); *GMAC Mtge.,*

*L.L.C. v. Herring*, 189 Ohio App.3d 200, 2010-Ohio-3650, 937 N.E.2d 1077, ¶ 32 (2d Dist.). Although proof of success is not required, the moving party must support its alleged defense with operative facts that have enough specificity to allow the trial court to judge the merit of the defense. *Miller v. Susa Partnership, L.P.*, 10th Dist. No. 07AP-702, 2008-Ohio-1111, ¶ 16. A proffered defense is meritorious if it is not a sham and when, if true, it states a defense in part, or in whole, to the claims for relief set forth in the complaint. *Miller* at ¶ 15.

{¶19} The decision to grant or deny a Civ.R. 60(B) motion lies within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Strack v. Pelton*, 70 Ohio St.3d 172, 174, 637 N.E.2d 914 (1994). The term "abuse of discretion" implies that the court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Because the law favors disposition of cases by a trial on the merits, courts should resolve doubt as to the establishment of a meritorious defense or a ground for relief in favor of the moving party. *Peter M. Klein Co. v. Dawson*, 10th Dist. No. 10AP-1122, 2011-Ohio-2812, ¶ 9; *Bank One v. SKRL Tool & Die, Inc.*, 11th Dist. No. 2003L048, 2004-Ohio-2602, ¶ 16.

{¶20} In this case, Developers filed their motion for relief from judgment less than a month after the court issued its cognovit judgment. Thus, the only remaining burden on Developers was to demonstrate the existence of a meritorious defense.

<u>Evidentiary Hearing</u>

**{¶21}** In Developers' first assignment of error, we are presented with the unusual argument that the trial court erred *by holding an evidentiary hearing* before ruling on their motion to vacate. Generally, when parties appeal the denial of their Civ.R. 60(B) motion to this court, they claim that the trial court erred by not holding a hearing. We find no merit to Developers' argument.

**{¶22}** To obtain relief under Civ.R. 60(B), the moving party must present operative facts that demonstrate the existence of a meritorious defense or claim. *Adomeit*, 39 Ohio App.2d 97, 316 N.E.2d 469 at paragraph two of the syllabus. There is no requirement that a moving party submit evidentiary materials, such as an affidavit, to support his or her motion for relief. *Id.* at 103. But good legal practice dictates that the moving party submit relevant evidence to demonstrate operative facts, as sufficient factual information is necessary to warrant a hearing on the motion. *Id.* at 104.

**{¶23}** "If the movant files a motion for relief from judgment and it contains allegations of operative facts which would warrant relief under Civ.R. 60(B), the trial court should grant a hearing to take evidence and verify these facts before it rules on the motion." *Id.* at 105. Moreover, "it is an abuse of discretion for the trial court to overrule a Civ.R. 60(B) motion for relief from judgment without first holding an evidentiary hearing where the motion and affidavits contain allegations of operative facts which would warrant relief under Civ.R. 60(B)." *Twinsburg Banking Co. v. RHEA Const. Co., Inc.,* 9 Ohio App.3d 39, 458 N.E.2d 440 (9th Dist.1983), syllabus.

**{¶24}** Here, the court conducted a hearing that allowed Developers to present evidence to verify their operative facts. Accordingly, Developers' first assignment of error is overruled.

Meritorious Defenses

**{¶25}** In their second assignment of error, Developers argue that the trial court erred when it denied their motion to vacate because they established the existence of meritorious defenses — essentially that they were not in default because Home Savings waived the November 2007 completion date and waived and or extended the November 2009 maturity date.

**{¶26}** Home Savings contends that Developers do not have meritorious defenses because (1) the Loan Agreement contained a waiver clause, preventing oral modification of its terms and modification by waiver, and (2) Developers defaulted on the loan and breached numerous provisions in the agreement.

A.    Waiver of November 2007 Phase I Completion Date

**{¶27}** Developers argue that Home Savings waived the requirement that Phase I be completed by November 2007. Home Savings disagrees, citing the waiver provision. The waiver provision states: "No waiver of any Event of Default shall extend to or affect any subsequent Event of Default or shall impair any rights, remedies and/or powers available to lender. No single or partial exercise of any right, remedy or power shall preclude other or further exercise thereof by [Home Savings]."

**{¶28}** Further, the Loan Agreement required Developers to obtain advance written permission from Home Savings for any modification or extension of a deadline. It

states: "[a]ny of the acts that Borrower is required to do or prohibited from doing by any of the provisions of this Agreement may, notwithstanding such provisions, be omitted or done, as the case may be, only if Lender by an instrument in writing, has given Lender's prior consent thereto."

{¶29} It is undisputed that Home Savings did not expressly consent in writing to extend the November 21, 2007 Phase I completion date or the November 21, 2009 loan maturity date. Regarding written waiver provisions, this court explained in *Snowville Subdivision v. Home S. & L.*:

> This court has recently held that written waiver provisions are valid and enforceable in Ohio. "Ohio law is very clear that a contract that expressly provides that it may not be amended, modified, or waived except in writing executed by the parties is not subject to oral modification." *Kelley v. Ferraro*, 188 Ohio App.3d 734, 2010-Ohio-2771, 936 N.E.2d 986, ¶ 39 (8th Dist.), citing *Freeman-McCown v. Cuyahoga Metro. Hous. Auth.*, 8th Dist. Nos. 77182 and 77380, 2000 WL 1594090 (Oct. 26, 2000); *Rosepark Properties, Ltd. v. Buess*, 167 Ohio App.3d 366, 2006-Ohio-3109, 855 N.E.2d 140, ¶ 38 (10th Dist.); *Chiaverini, Inc. v. Jacobs*, 6th Dist. No. L-06-1360, 2007-Ohio-2394, ¶ 24; *Fultz & Thatcher v. Burrows Group Corp.*, 12th Dist. No. CA2005-11-126, 2006-Ohio-7041, ¶ 17.
>
> However, even with such a written waiver provision, [Home Savings], through its actions, may waive a requirement under the agreement. Discussing no-oral modification clauses, the Twelfth District reasoned,
>
> > if such clauses are rigidly enforced, then a party could simply insert the clause into an agreement and would be magically protected in the future no matter what that party said or did. More simply, by including a no-oral-modification clause in a contract, a party could orally induce the opposing party in any way and then hide behind the clause as a defense. (Internal citations omitted.) *Fields Excavating, Inc. v. McWane, Inc.*, 12th Dist. No. CA2008-12-114, 2009-Ohio-5925, ¶ 17, citing *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 381, 122 N.E. 378 (1919).

*Snowville Subdivision*, 8th Dist. No. 96675, 2012-Ohio-1342, at ¶14-15.

**{¶30}** This court went on to explain in *Snowville Subdivision*:

[Home Savings] may have acquiesced when the improvements were not completed in 2007 when making disbursements. According to appellants' complaint, [Home Savings] continued to make disbursements even though a condition precedent to any disbursement was that appellants not be in breach of the agreement. Based on these arguments and the facts alleged in appellants' complaint, it is difficult to conclude that, as a matter of law, [Home Savings] did not waive the requirement in the contract that improvements be completed by 2007.

[Home Savings] argues that its mere silence cannot be construed as a waiver, especially in light of the anti-waiver provisions. Under the Loan Agreement, a precondition to any disbursement of funds from Snowville's loan account was that appellants not be in breach. [Home Savings] made disbursements after 2007, indicating they were waiving the requirement for completion of improvements for loan disbursements. This is more than mere silence. However, its waiver in one instance does not act to relinquish its rights to enforce other contract provisions according to the anti-waiver provision.

The waiver must be clear and unequivocal if it contradicts a written contract provision. If it is, a written waiver provision, just like any other provision in a contract, can be waived by actions of the parties. *Glenmoore Builders, Inc. v. Smith Family Trust,* 9th Dist. No. 24299, 2009-Ohio-3174, ¶ 41. Based on appellants' complaint, [Home Savings] did not enforce the completion date for the improvements or object when appellants continually failed to timely complete goals under the Loan Agreement. [Home Savings] continued to make disbursements under the Loan Agreement.

*Id.* at ¶ 15-17.

**{¶31}** Although we were addressing whether Developers sufficiently pled a breach of contract claim in *Snowville Subdivision*, the analysis is relevant here. The facts establish that Home Savings did in fact waive the November 2007 Phase I completion date. Despite Developers' breach — by not completing Phase I by November 2007 — Home Savings continued to make disbursements late into 2008. Indeed, Home Savings

authorized several draws in 2008 as the work was completed — including disbursements for $100,000, $197,000, $216,000, $80,000, $145,000, and $168,000.

{¶32} Accordingly, we conclude that Developers have presented operative facts that, if true, establish the existence of a meritorious defense to the Home Savings claim that they were in default because they did not complete Phase I by November 2007.

B.  Waiver of November 2009 Loan Maturity Date

{¶33} Developers further argue that Home Savings waived the November 2009 loan maturity date (1) because it entered into the Escrow Agreement (which gave Developers 12 months from the date of the agreement to complete construction of the sanitary sewer, which Developers assert would be until November 2010), and (2) because Developers exercised their rights under the Loan Agreement and extended the loan maturation date by one year, extending the completion date until at least November 2010.

1.  Escrow Agreement

{¶34} The Escrow Agreement stated:

1. The disbursement of funds by [Home Savings] from [Developers'] ACCOUNT with respect to the payment of any and all statements for labor and materials in connection with the aforesaid improvements of Phase I of the Woodlands of Snowville Subdivision and the improvement plans therefore, shall be made only upon receipt by [Home Savings] of payment certificates from the Project Engineer, approved by [Developers] and the Engineer of City, that said certificates reflect the reasonable cost and reasonable value of the completion of the development, as verified by [Home Savings], to the date of each disbursement.  Upon receipt of said payment certificate and upon its own verification, [Home Savings] shall then make the appropriate disbursement of funds.

**{¶35}** With respect to the Escrow Agreement, this court explained in *Snowville Subdivision*, 8th Dist. No. 96675, 2012-Ohio-1342, that even if we were to assume that Developers were "correct that the [Escrow] Agreement evidences a waiver of the completion date, they would still be in breach of the Loan Agreement because the maturity date occurred without [Developers] repaying the loan." *Id.* at ¶ 19. We went on to explain that under the Escrow Agreement, Home Savings never promised to provide funds to Developers for construction. We stated, "[i]f anyone had a claim against [Home Savings] from the [Escrow] Agreement it would be the City if it had taken over construction[.]" *Id.* at ¶ 20. Further, we noted that the Escrow Agreement did not "constitute a clear promise on the part of [Home Savings] to continually advance funds to appellants outside the terms of the Loan Agreement," and thus, " the [Escrow] Agreement did not evidence a clear intent to extend the maturity date of the loan." *Id.*

**{¶36}** Although the Escrow Agreement alone "did not evidence a clear intent to extend the maturity date of the loan," we conclude that the Escrow Agreement, coupled with other events that were occurring in same time frame, could operate to extend the loan maturation date.

**{¶37}** Accordingly, based on our decision in *Snowville Subdivision*, we conclude that the Escrow Agreement did not extend the maturity date of the loan.

2.     <u>Option to Extend Loan Maturation Date</u>

**{¶38}** With respect to Developers' assertion that it validly extended the loan by exercising its rights under the Loan Agreement, this court stated in *Snowville Subdivision*:

> Appellants have also asserted that the loan was not due because they validly exercised a provision of the Loan Agreement allowing them to

extend the maturity date for one year. Section 4 of the Loan Agreement states:

> Provided that at the time of such exercise, no Event of Default or Possible Default * * * then exists hereunder or under any other Loan Document, Borrower shall have two (2) options to extend the term of the Loan (each an "Extension Option"). Each extension option shall be for a period of an additional twelve (12) months thereafter. * * * Borrower shall exercise the first Extension Option by providing written notice of such exercise to [Home Savings] no less than thirty (30) days prior to the Maturity Date. * * *

> Contemporaneously with the exercise of each Extension Option, Borrower will pay to [Home Savings] an extension fee in an amount equal to one quarter of one percent (1/4%) of the outstanding principal balance of the Loan.

Appellants attached documentation to their complaint indicating they sent an extension notice on October 19, 2009, and that they submitted the required payment on November 12, 2009, which was processed and accepted by Home Savings on November 16, 2009. Based on the facts pled, and accepting their accuracy, appellants have established they may have validly extended the maturity date of the loan. If Home Savings accepted the payment, it could waive the requirement within the extension clause stating that no condition of default exist at the time of the extension. "[W]aiver of a contract term can occur when a party conducts itself in a manner inconsistent with an intention to insist on that term." *Vivi Retail, Inc. v. E & A N.E. Ltd. Partnership*, 8th Dist. No. 90527, 2008-Ohio-4705, ¶ 30, citing *Convenient Food Mart Inc. v. Atwell*, 11th Dist. No. 2003-L-174, 2005-Ohio-704.

Home Savings argues that it did not accept the payment and refused to extend the maturity date. However, that argument relies on evidence outside of the complaint. The court could have converted the motion to dismiss to one for summary judgment to rely on this evidence of refusal to extend the maturity date, but from the face of the complaint it appears that Home Savings accepted payment of the fee it required to extend the loan for one year. Appellants have put forth a set of facts supported by evidence indicating the maturity date of the loan was extended.

*Snowville Subdivision* at ¶ 21-23.

**{¶39}** In *Snowville Subdivision*, this court was considering a Civ.R. 12(B)(6) motion to dismiss based upon the complaint. Although relevant, we must now consider the facts that are in the record before us. Home Savings argues that Developers did not extend the loan for one year for two reasons: (1) they could not extend the loan because they were in default, and (2) they were untimely because they failed to send the extension check "contemporaneously" with the extension letter. After reviewing the record, we find Home Savings arguments to be without merit.

**{¶40}** First, we have already determined that Home Savings waived the requirement that Developers complete the project by November 2007. And it is undisputed that Developers had never missed paying a monthly interest payment.

**{¶41}** Regarding Home Savings' second argument, that Developers were untimely, we disagree. The record establishes that Chris Bender sent a letter to Home Savings on October 19, 2009, informing it that Developers were exercising their first 12-month extension of the loan, until November 21, 2010. Before he did, he called Mark Bobbit, the loan officer for the Woodlands development project and the person whom he always dealt with regarding the project. He told Bobbit that Developers were exercising their right under the contract to extend the maturity date of the loan and asked him how to calculate the extension fee. Bobbit contacted him in early November and told him the amount of the extension fee. Bender sent the check to Home Savings. The record reflects that Home Savings received and deposited the check on November 17, 2009. The following day, Home Savings sent a check to Developers for the same amount.

{¶42} We conclude that based on this record, Developers sent the check "contemporaneously" with the extension letter complying with the terms of the Loan Agreement.

{¶43} Regarding Home Savings' claim that it rejected the check, we find that under the Loan Agreement, Home Savings could not refuse Developers' right to extend the loan maturity date unless the Developers were in default. And as we stated previously, Developers were not in default because Home Savings waived the Phase I completion date.

{¶44} Further, the record establishes that after a December 4, 2009 meeting between Developers and representatives of Home Savings, Developers — in reliance on Home Savings' actions — sent a $37,000 check to the city of Brecksville to pay for inspection fees for the upcoming sanitary sewer project, which according to several witnesses (including the subcontractor who testified that he had already scheduled people), was set to begin in January 2010.

{¶45} Regarding Home Savings' claim that Developers failed to submit financial information to it or that Developers experienced a material adverse change in their financial condition, we find that these claims are in dispute. Developers testified that they submitted tax returns and financial information to Home Savings when it became available to them, explaining that businesses often obtain extensions into October of the following tax year to complete and file their tax returns for the current year. And although Developers did not submit new financial information to Home Savings after the December 4, 2009 meeting, we conclude that they never had a chance to; Home Savings

sent the loan termination letter on December 23, 2009. Further, whether Developers experienced a material adverse change in their financial condition is also in dispute. Developers contend their financial condition actually improved; Home Savings claims that Developers' financial condition deteriorated. But at this point in the proceedings, Developers needed to only assert operative facts that, if true, present a defense to claims set forth in the cognovit judgment. We conclude that Developers have done so in this case.

{¶46} With respect to Home Savings' other assertions of Developers' purported default, we conclude that Home Savings never provided Developers with a 30-day notice and time to cure, as required under the Loan Agreement.[2]

{¶47} Accordingly, we conclude that Developers have presented operative facts that establish the existence of meritorious defenses to Home Savings' cognovit judgment because they properly extended the November 21, 2009 loan maturation date to November 21, 2010. Home Savings' alternative argument, that even if Developers properly extended the loan maturation date to November 21, 2010, they still have not met that completion date, nor have they paid monthly interest payments since December 2009, and thus, they are in default, is without merit. Developers stopped everything on the project, including paying interest, upon receiving Home Savings' loan termination letter. Developers' actions were reasonable and understandable under the circumstances.

---

[2]Section 15(c) of the Loan Agreement provides that if Developers are in default of "any non-monetary covenant," they have 30 days to correct or cure the default "after written notice thereof has been given" to them by Home Savings.

**{¶48}** Thus, the trial court abused its discretion by denying Developers' motion to vacate cognovit judgments, as they have presented the existence of meritorious defenses. Developers' second assignment of error is sustained.

**{¶49}** Judgment reversed and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellants recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY J. BOYLE, JUDGE

PATRICIA ANN BLACKMON, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR