[Cite as *Aboagye v. Peake*, 2026-Ohio-1578.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| KELLI CHRISTINA MAYS ABOAGYE | : | |
| | : | C.A. No. 30627 |
| Appellees | : | |
| | : | Trial Court Case No. 2020 CV 04104 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas Court) |
| CARLTON VARNZELL PEAKE JR. ET AL. | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| Appellant | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on May 1, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Mary K. Huffman*

_____
MARY K. HUFFMAN, JUDGE

EPLEY, J., and HANSEMAN, J., concur.

OPINION

RICHARD A. BOUCHER, Attorney for Appellant
JAMES J. BIRCH, Attorney for Appellee

HUFFMAN, J.

{¶ 1} Lathedia Peake appeals from a decision of the Montgomery County Common Pleas Court overruling her Civ.R. 60(B) motion for relief from a default judgment entered against her and her son Carlton Varnzell Peake, Jr. For the following reasons, the judgment of the trial court is affirmed.

**Facts and Procedural History**

{¶ 2} On October 23, 2020, Kelli Christina Mays-Aboagye filed a complaint against the Peakes, alleging breach of contract, unjust enrichment, and fraud in the inducement. According to the complaint, the Peakes enacted an elaborate scheme to induce Kelli to lend them money. Kelli alleged that Carlton fabricated a story that he was owed hundreds of thousands of dollars from Sportsbook, an online sports betting website associated with Bally's Las Vegas Hotel and Casino, and that he needed money to be able to collect those funds. Kelli asserted that Carlton told her that he had hired an attorney, and he had the alleged attorney contact her to validate that Carlton was owed the funds. The complaint alleged that Carlton promised Kelli that if she provided him with the money, he would repay her above and beyond what she loaned him. Kelli asserted that Carlton lived with Lathedia, who was aware of and involved in the scheme, and who "acted as a broker" to facilitate the transfer of the money from Kelli into Lathedia's account, to be used to help Carlton collect the money allegedly owed to him.

{¶ 3} The complaint further alleged that on October 28, 2016, Carlton obtained a loan of $90,000 from Kelli, and pursuant to the loan agreement, Carlton agreed to repay Kelli $11,000 by December 10, 2016. According to the agreement, any failure to timely pay was subject to a late charge of $2,000. Carlton was further required to pay the remaining balance by December 13, 2017, with a minimum payment of $2,000 per month, due on the last day of each month, beginning October 28, 2016. A late charge of $100 applied for any late monthly payment. In the case of default, the agreement stated that Carlton would pay interest of 20% on the unpaid balance, and in the event the note was placed in collections, Carlton agreed to pay attorney fees of 15% on top of the unpaid balance. According to the complaint, Carlton failed to repay $11,000 by December 10, 2016, as well as the remainder of the loan by December 31, 2017, as required by the terms of the loan agreement.

{¶ 4} Kelli further alleged that on December 22, 2016, she entered into a second loan agreement with Carlton in the amount of $140,000, under which he agreed to repay Kelli $140,000 by December 31, 2019, with a minimum monthly payment of $4,000, due the last day of each month, beginning on December 22, 2016. Any monthly payment not made on time was subject to a late fee of $500, and in the case of default, interest of 30% would apply to the unpaid balance. According to the complaint, Carlton further agreed that if the loan was placed in collections, attorney fees of 30% would be added to the unpaid balance of the loan. Kelli alleged that Carlton did not repay her $140,000 by December 31, 2019, and to date had made no payments. Kelli asserted that she made a good faith effort to work with Carlton on each loan agreement to no avail. She claimed upon information and belief that Carlton was never owed money from Sportsbook, he had never hired an attorney, and "the Defendants kept and used [her] money for their own uses."

3

{¶ 5} In the first two counts of the complaint, Kelli pleaded claims of breach of contract against Carlton for both loan agreements. In the second two counts, she pleaded claims of unjust enrichment in the amount of $230,000, as well as fraud in the inducement, against Lathedia and Carlton. Kelli requested judgment against Carlton in the principal amount of $90,000, with attorney fees of 15%, as well as $3,200 in late charges pursuant to the first loan agreement. She further requested judgment against Carlton in the principal amount of $140,000, with attorney fees at a rate of 30%, pursuant to the second loan agreement. Finally, she sought compensatory and punitive damages. Copies of the loan agreements were attached to the complaint. The court's docket reflects that "L. Peake" accepted service of the complaint via FedEx on October 30, 2020.

{¶ 6} On December 7, 2020, the court issued a notice that Carlton and Lathedia were in default for answer or appearance, and it granted them 14 days to respond. On December 16, 2020, Kelli filed a motion for default judgment along with a supporting affidavit. She sought $230,000, plus costs of $334.75 and post-judgment interest at the statutory rate. On December 22, 2020, the court granted default judgment in favor of Kelli in the amount requested. On July 15, 2022, Kelli filed a praecipe requesting a certificate of judgment lien against the Peakes.

{¶ 7} On July 17, 2025, almost five years after the default judgment was entered, Lathedia filed the motion to vacate the default judgment. She argued that she had a meritorious claim to present in that she had no knowledge of "anything contained in the complaint." Lathedia asserted that all of the facts and allegations in the complaint pertained to Carlton, with the exception of the allegation that she acted as a broker, and that Kelli's "wherefore clause [did] not even contain a request for judgment" against her. She argued that she was almost 70 years old, suffering from medical conditions, and under Carlton's

4

care when the alleged events occurred. She claimed that she was unaware of Carlton's agreements with Kelli, had never met her, did not act as a "broker," and did not transfer Kelli's loans into her account. According to Lathedia, her bank statements revealed that no money was transferred into or out of her account relative to this matter or Kelli.

{¶ 8} Regarding her grounds for relief, Lathedia cited Civ.R.60(B)(5). According to Lathedia, Carlton took possession of the complaint upon delivery by FedEx, advised her that it had nothing to do with her, and "never permitted her to defend herself." She stated that while under the care of a different family member who attempted to assist her in selling her home, the judgment against her was discovered. Lathedia asserted that Carlton intentionally hid the truth from her and caused her to incur the judgment for something she had "absolutely no knowledge of." Finally, she asserted that she filed her motion upon discovery of the judgment against her, and that it was timely.

{¶ 9} Lathedia attached an affidavit, which her motion "incorporated." Kelli did not respond to the motion. On August 28, 2025, the court overruled Lathedia's motion, and she timely appealed.

{¶ 10} Before addressing Lathedia's sole assignment of error, we review the trial court's decision overruling her motion. Initially, the court noted that Civ.R. 60(B)(5) is a catchall provision that is intended only to be used in rare cases where substantial grounds justify relief, and that it offers no protection to a party who ignores its duty to protect itself.

{¶ 11} The court further found that Lathedia "put forth a **possible** meritorious defense" in that she denied the allegation that she acted as a broker to facilitate the transfer of Kelli's money to her own account. The court found that she was incorrect in asserting that the allegations in the complaint pertained only to Carlton and that the complaint did not contain a request for relief against her. It was significant to the court that Lathedia never

5

denied being properly served with the complaint. The court concluded, "[g]iven this set of circumstances, . . . *the actual basis* for [Lathedia's] Motion is *Civ.R. 60(B)(1)* concerning excusable neglect, not Civ.R. 60(B)(5)," noting that she provided "no other basis for relief under Civ.R. 60(B)(5), and thus cannot rely on this provision." Finally, the court found that the motion was untimely because it was not filed within one year of the judgment, and the court concluded that Lathedia failed to meet her burden under *GTE Automatic Elec., Inc. v. ARC Industries*, 47 Ohio St. 2d 146 (1976).

### Assignment of Error and Analysis

{¶ 12} Lathedia's assignment of error contends that the court abused its discretion in arbitrarily and unreasonably overruling her Civ.R. 60(B) motion. She asserts that when the complaint was served, she asked Carlton what to do with the unopened envelope, and he advised her that it had nothing to do with her and that he would take care of it. She claims that was the last she knew about any issue until she attempted to sell her house five years later and learned of the lien in the course of a title search.

{¶ 13} Lathedia asserts that she is likely to prevail on her meritorious defense given her lack of knowledge "of anything contained" in the complaint. She claims that a review of the complaint reveals that the only mention of her therein was the allegation that she acted as a broker, and the "wherefore clause" did not contain a request for judgment against her. According to Lathedia, at the time of the complaint, she "was nearly 70 years old, suffering from medical problems and being solely cared for" by Carlton. She argues that she was unaware of any agreements entered into between Carlton and Kelli and had never met or spoken with Kelli.

{¶ 14} Although not contesting service, Lathedia asserts that a "motion to vacate judgment need not fully comply with the requirements of Civ.R. 60(B) because vacating a

6

judgment based on service remains an inherent power of the trial court, and further, the timelines prescribed in Civ.R. (60)(B) do not apply to issues with service." She further argues that "it is a basic tenet of Ohio jurisprudence that cases should be decided on their merits." Lathedia asserts that she "is an elderly woman, being targeted by her own son, who trusted that he was taking care of her affairs," only to learn several years later that his actions, as alleged by Kelli, and in concealing the lawsuit from her, "caused her to incur a judgment of over $230,000.00 and a lien against her only asset." In her reply brief, Lathedia directs our attention to *Beach Body Tanning, Inc. v. Kovach*, 2005-Ohio-2629, ¶ 1-4 (8th Dist.).

{¶ 15} "'Civ.R. 60(B) is a remedial rule to be liberally construed so that the ends of justice may be served.'" *Liberty Nursing Ctr. of Englewood, Inc. v. Valentine*, 2012-Ohio-1096, ¶ 54 (2d Dist.), quoting *Kay v. Marc Glassman, Inc.*, 76 Ohio St.3d 18, 20 (1996). We have recognized that "'Civ.R. 60(B) represents an attempt to strike a balance between conflicting principles that litigation must be brought to an end and that justice should be done.'" *GMAC Mtge., L.L.C. v. Herring*, 2010-Ohio-3650, ¶ 30 (2d Dist.), quoting *Chapman v. Chapman*, 2006-Ohio-2328, ¶ 13 (2d Dist.).

{¶ 16} Civ.R. 60(B) states:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed

7

or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation.

{¶ 17} "To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that (1) the party has a meritorious defense or claim to present if relief is granted, (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B), and (3) the motion is made within a reasonable time." *GMAC Mtge.* at ¶ 30, citing *GTE*, 47 Ohio St.2d 146, at paragraph two of the syllabus. "All of these requirements must be satisfied, and the motion should be denied if any one of the requirements is not met." *Id.*, citing *Strack v. Pelton*, 70 Ohio St.3d 172, 174 (1994), and *Cincinnati Ins. Co. v. Schaub*, 2008-Ohio-4729, ¶ 15 (2d Dist.).

{¶ 18} "In order to establish a meritorious claim or defense under Civ.R. 60(B), the movant is required to allege a meritorious claim or defense, not to prove that [he] will prevail on such claim or defense." *Aurora Loan Servs., L.L.C. v. Wilcox*, 2009-Ohio-4577, ¶ 14 (2d Dist.). "Civ.R. 60(B) exists to resolve injustices that are so great that they demand a departure from the strict constraints of res judicata. . . . However, the rule does not exist to allow a party to obtain relief from his or her own choice to forgo an appeal from an adverse decision." *Bank of Am., N.A. v. Kutchta*, 2014-Ohio-4275, ¶ 15.

{¶ 19} Regarding grounds for relief, Civ.R. 60(B)(5) is a "catchall provision," distinct from the more specific grounds enumerated in Civ.R. 60(B)(1)-(4), and it "is only to be used in an extraordinary and unusual case when the interests of justice warrants it." *Adomeit v.*

*Baltimore*, 39 Ohio App.2d 97, 105 (8th Dist. 1974). It "is not to be used as a substitute for Civil Rule 60(B)(1), (2) or (3), when it is too late to seek relief under these provisions." *Id.* Significantly, "[i]t is well-established that the 'other reason' clause of Civ.R. 60(B) will not protect a party who ignores its duty to protect its interest." *Mount Olive Baptist Church v. Pipkins Paints*, 64 Ohio App.2d 285, 288 (1979). A "party who willfully and deliberately chooses to ignore a complaint and has stated no other reason for failing to appear or answer a complaint has not stated an adequate ground for relief from a default judgment pursuant to Civ.R. 60(B)(5)." *Id.* Finally, "so long as service of process reaches a person qualified to accept service of process under the Civil Rules, lack of actual notice is not a basis for relief under Civ.R. 60(B)(1)." *Michael D. Tully Co., L.P.A. v. Dollney*, 42 Ohio App.3d 138, 141 (8th Dist. 1987).

{¶ 20} In addition to a motion under Civ.R. 60(B), the movant "must also file a brief or memorandum of fact and law, and affidavits, depositions, answers to interrogatories, exhibits and any other relevant material. The material submitted must contain operative facts." *Adomeit* at paragraph two of the syllabus. "Operative facts are those facts which if proven, would give rise to a meritorious defense." *Society Natl. Bank v. Val Halla Athletic Club & Recreation Ctr.*, 63 Ohio App.3d 413, 418 (9th Dist. 1989). "Broad, conclusory statements do not satisfy the requirement that a Civ.R. 60(B) motion must be supported by operative facts that would warrant relief from judgment." *Aurora Loan Servs.* at ¶ 14. "The rigid procedural requirements of Civil Rule 56 regarding the documents and other material the parties should submit in support of and in opposition to a motion for summary judgment are excellent guides and a commendable procedure to be followed in seeking relief or in opposing relief under Civil Rule 60(B)." *Adomeit* at 104.

9

**{¶ 21}** The decision to grant or deny a Civ.R. 60(B) motion is left to the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *In re Adoption of A.J.W.*, 2023-Ohio-2609, ¶ 15 (2d Dist.). "A trial court abuses its discretion when its decision is 'unreasonable, arbitrary, or unconscionable.'" *Bissell v. Bissell*, 2016-Ohio-3086, ¶ 9 (2d Dist.), quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

**{¶ 22}** Lathedia's affidavit in support of her motion stated that she had "personal knowledge of the facts" and that the "facts contained in the Motion to Vacate Judgment are true and accurate to the best of my knowledge and belief." Such a conclusory and blanket verification of the motion's contents fails to satisfy the requirement for evidentiary material containing operative facts. The affidavit itself must contain the operative facts, not simply verify that unspecified facts exist elsewhere in the motion. In other words, it must supply evidentiary content beyond mere attestation, and Lathedia's affidavit was deficient.

**{¶ 23}** Contrary to Lathedia's assertion that the only allegation against her in the complaint was that she acted as a broker, the complaint specifically alleged claims of unjust enrichment in the amount of $230,000 and fraud in the inducement against her, as the trial court found. In support of a meritorious defense that she never acted as a broker or transferred money from Kelli into her own account, she "incorporated" her deficient affidavit. Despite these failures, Lathedia's motion reflects that she alleged a meritorious defense, namely that she had no knowledge of Carlton's scheme to obtain money from Kelli.

**{¶ 24}** Regarding grounds for relief, however, whether Lathedia proceeded under under Civ.R. 60(B)(5), as she claimed, or under Civ.R. 60(B)(1), as the trial court found, she was not entitled to relief. While she argued that she had no knowledge of the complaint, suggesting mistake or excusable neglect, she does not deny service of process. Rather, she

10

admits that she received it and asked her son about it. The return of service reflects that it was accepted by "L. Peake," and the record supports a conclusion that she failed to protect her own interests such that she was not entitled to protection under Civ.R. 60(B)(5). Further, her alleged lack of actual notice is not a basis for relief under Civ.R. 60(B)(1), given that service of process was accepted, presumably by Lathedia herself.

{¶ 25} Finally, Lathedia's reliance on *Kovach*, 2005-Ohio-2629 (8th Dist.), is misplaced. In *Kovach*, Beach Body Tanning, buyers of a tanning salon business, alleged fraud against the seller of a salon and his mother and sought imposition of a constructive trust on any monetary assets in the mother and son's possession. *Id.* at ¶ 2. A default judgment was entered against the mother, Rebecca Kovach. *Id.* at ¶ 4. As in this case, upon receipt of the complaint, Rebecca asked her son about it and was told that he was handling it. *Id.* at ¶ 3. She ignored the complaint, as well as two court notices of default hearings she received and a summons to a deposition sent to her work. *Id.* After learning that garnishment proceedings had been initiated, she sought relief from judgment, which was denied. *Id.* at ¶ 4. Contrasting this case, it was undisputed that her motion was timely filed. *Id.* at ¶ 11. Beach Body Tanning disputed both that her neglect was excusable and that she had a meritorious defense to present. *Id.*.

{¶ 26} *Kovach* determined that despite "Rebecca's lack of an acceptable reason for failing to respond to the complaint, . . . the court may determine that justice requires granting the motion" under the authority of Civ.R. 60(B)(5). *Id.* at ¶ 13. Unlike this case, in which Kelli alleges that Lathedia was unjustly enriched, in *Kovach* it was undisputed that Rebecca did not benefit from the sale of the business. *Id.* at ¶ 16. The amount in question in *Kovach* was almost $100,000. *Id.* The Eighth District found that "[in] light of those facts, it [was] appropriate to examine the merits of her case, despite her lack of excusable neglect." *Id.*

11

**{¶ 27}** Citing Civ.R. 9(B) and the elements of fraud, the court found that the complaint against Rebecca failed to allege "with specificity that Rebecca behaved fraudulently toward plaintiff"; that she was a member, shareholder, or officer of the limited liability corporation; or that she owed a fiduciary duty to plaintiff. *Id.* at ¶ 24-25. The complaint further did not allege the first requirement of fraud—representation, or where there had been a duty to disclose, concealment of a fact—and Rebecca had "never even communicated with plaintiff." *Id.* at ¶ 24. *Kovach* determined that "[f]ailure to respond to a complaint which does not state a claim upon which relief can be granted should not result in a default judgment against the defendant. A plaintiff still needs to allege a valid claim in order to prevail, even against a neglectful defendant." *Id.* at ¶ 26. *Kovach* vacated the trial court's judgment and remanded the matter. *Id.* at ¶ 27.

**{¶ 28}** First, given that Rebecca ignored the complaint and other filings, we are not persuaded by *Kovach's* reliance upon Civ.R. 60(B)(5), which does not shield a party who turns a blind eye to its duty to protect its own interest. Further, unlike the plaintiff in *Kovach*, Kelli alleged a valid claim of fraud in the inducement against Lathedia. Kelli alleged that Lathedia made material misrepresentations in acting as a "broker," or intermediary, knowing the statements were false, and that Lathedia induced her to enter into the contracts, proximately causing her injury, such that she was entitled to compensatory and punitive damages from Lathedia. Significantly, Kelli also alleged a valid claim of unjust enrichment in the amount of $230,000. Lathedia's reliance upon *Kovach* is misplaced.

**{¶ 29}** For all of these reasons, Lathedia was not entitled to relief from default judgment, and she has failed to demonstrate that the trial court abused its discretion. Lathedia's assignment of error is overruled.

## Conclusion

**{¶ 30}** The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

EPLEY, J., and HANSEMAN, J., concur.